EXHIBITS OF EVIDENCE

-32-

## EXHIBITS OF EVIDENCE -- DOCUMENTED RECORD

1. EXHIBIT "A-1"--Brief of Appellant--Attorney Donald G. Madison, Madison--Direct Criminal Appeal--Pages 28 & 29.

2. EXHIBIT "B-2"--Brief of Appellee--Assistant United States Attorney, Todd Brown--Direct Criminal Appeal--Page 10.

3. EXHIBIT "C-3"--Brief of Appellee-- Assistant United States Attorney, Todd Brown--Direct Criminal Appeal--Pages 16 & 17.

4. EXHIBIT "D-4"--Brief of Appellee--United States of America, Direct Criminal Appeal, Pages 19 & 20.

5. EXHIBIT "E-5"--Brief of Appellant--Attorney Donald G. Madison-- Direct Criminal Appeal--Pages 42--45.

6. EXHIBIT "F-7"--Brief of Appellant--Attorney Donald G. Madison-- Direct Criminal Appeal--Page 16.

7. EXHIBIT "G-8"--Brief of Appellant--Attorney Donald G. Madison-- Direct Criminal Appeal--Page 17.

8. EXHIBIT "H-9"--Brief of Appellant--Attorney Donald G. Madison-- Direct Criminal Appeal--Page 18.

9. EXHIBIT "I-10"-Note from the jury--Stamped filed on June 19, 2003; and signed by Foreperson--Betty Johnson.

10. EXHIBIT "J-11"-Sentencing Transcript--Pages 16, 17, and 22&23-- Honorable Mark E. Fuller, Judge.

11. EXHIBIT "K-12"-Verdict of the Jury--Signed by Foreperson-- Betty Johnson--June 19, 2003.

12. EXHIBIT "L-13"-Order of the Court--United States Magistrate Judge, Charles S. Coody.

13. EXHIBIT "M-14"-Motion to withdraw Petition--filed by Attorney Donald G. Madison--Erroneous Motion.

> reasonable for lawmakers to believe that the use of the challenged classification would promote that purpose. *Western & Southern Life Insurance So. V. State Board of Equalization*, 451 U.S. 648, 668, 1010 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981). We readily conclude that the sentencing scheme in question withstands scrutiny under the rational basis standard. The fact that crack cocaine is more addictive, more dangerous, and can be sold in smaller quantities than powder cocaine is sufficient reason for Congress to provide harsher penalties for its possession, *United States v. Watson*, 953 F.2d 895, 898 (5th Cir.), *cert. denied*, -- U.S. -- , 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992). *See also United States v. House*, 939 F.2d 659, 664 (8th Cir.1991); *United States v. Thomas*, 900 F.2d 37, 39 (4th Cir.1990); *United States v. Cyrus*, 890 F.2d 1245, 1248 (D.C.Cir.1989).
> *U.S. v. King*, 972 F.2d 971, 972 (11th Cir.1992).

The sentencing guidelines provide additional support. "Crack" cocaine is dealt with much more severely than "powder".

(b)    The Court did not conduct a James hearing to determine whether there was corroborative evidence other than Carter's alleged statement made to Salery. The only evidence of a conspiracy was the testimony of Wallace Salery who testified that Carter said the other cocaine was Cheatham's when Carter allegedly picked up more than one kilo.

> "[5]   Under *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the trial judge must determine the admissibility of a coconspirator's statements by deciding whether the government has offered substantial independent evidence of a conspiracy sufficient to go to the jury.

28

EXHIBIT "A-1"

> Usually this is accomplished by holding a *James* hearing out of the presence of the jury. If, after the hearing, the judge is satisfied that there is substantial independent evidence that (1) a conspiracy existed, (2) that the coconspirator and the defendant against whom the statement is to be offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy, then he may allow into evidence the statements of the coconspirator. Fed.R.Evid. 801(d)(2)(E). As an additional measure of protection the trial judge, on appropriate motion at the conclusion of all the evidence, must determine as a factual matter whether the prosecution has established the three facts listed above by a preponderance of the evidence. If the prosecution has failed to link the coconspirator's statements to proof of a conspiracy, the judge must determine whether a curative instruction to the jury to disregard the coconspirator's statements will correct the default or whether a mistrial is mandated. *James*, 590 F.2d at 582-83.
>
> *U.S. v. Alvarez*, 696 F.2d 1307, 1310 (11th Cir 1988).

There was no testimony as to any agreement between Carter and Cheatham; no testimony as to how they conspired together or the elements of a partnership; no testimony as to whom Cheatham supposedly sold to; no evidence as to Cheatham cooking any cocaine. Carter's statements are the only statements implying a conspiracy, which violates *U.S. v James, id.*

(C) The Government admitted none of the possessory drugs applied to Cheatham. Therefore, the Government failed to establish drug quantity alleged in the Indictment. The Government and the trial court conceded this fact at the sentencing as well.

29

EXHIBIT "B-2"

Contrary to Cheatham's claim, two other witnesses, Willie Terrell Jackson and Abraham Humphrey, corroborated Salery's testimony that the above-referenced cocaine was sold in crack cocaine form. (R9-75:8-77:10, 81:20-87:10). As part of this argument, Cheatham claims the trial court should have held a *James* hearing to determine the admissibility of Salery's statement. See United States v. James, 590 F.2d 575 (5th Cir. 1979). The district court did not abuse its discretion in not holding such a hearing, as this Court has "stressed that *James* did not establish an inflexible rule that a hearing must be held. Rather, the hearing is a tool for the use and assistance of the trial judge. The decision not to hold a *James* hearing in this case is not reversible error." United States v. Padilla-Martinez, 762 F.2d 942, 950 (11th Cir. 1985) (internal citations omitted). Because Cheatham never moved for such a hearing, nor did he object to the failure to conduct such a hearing in the case below, the decision to admit Salery's testimony must be reviewed under plain error analysis. Fed. R. Crim. P. 52(b); Pielego, 135 F.3d at 709. Cheatham has failed to meet his burden in this respect. See United States v. Foree, 43 F.3d 1572 (11th Cir. 1995).

IV. WHETHER THE TRIAL OF CARTER AND CHEATHAM WAS IMPROPERLY JOINED.

Carter and Cheatham were indicted together in a count charging them with conspiring together and with others to distribute and possess with intent to distribute crack. (R1-54). "There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of

10

United States regarding information substantiating those counts. (R9-8:2-16).

A prosecutor's charging of a defendant may violate due process rights if it penalizes the defendant exercising a constitutional or statutory right. See, United States v. Stokes, 124 F.3d 39, 45 (1st Cir. 1997); United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001); United States v. Gamez-Orduno, 235 F.3d 453, 462 (9th Cir. 2000); and, United States v. Taylor, 749 F.2d 1511 (11th Cir. 1985). Nevertheless, generally, a defendant must show actual vindictiveness in order to prevail. See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). Appellants have failed to show that a vindictive prosecution claim is warranted under the facts of the instant cause or actual vindictiveness, both of which are required to prevail on a vindictive prosecution claim. Bordenkircher, 434 U.S. at 363 (1978).

Appellants' claim with regard to the alleged use of a proffer statement made by Carter has been discussed by the United States in part I, above. Appellants' claim with regard to the *Batson* issue has been discussed by the United States in part VII, above. Appellants' claim regarding an alleged failure to provide the defense with discovery was discussed in part IX, above.

XII. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT CONVICTION OF CARTER AND CHEATHAM.

Appellants make the naked claim that the trial court erred in not granting their motions for judgment of acquittal at the close of the Government's case and at the end of the case. The appellants do not point to any particular lack of evidence nor do they cite any authority for their position aside from a general citation describing the standard of review in a sufficiency of the evidence issue.

16

Accordingly, as the appellants' brief does not comport with the requirements set forth in Rule 28, Fed. R. App. P., the appellants' argument fails. See Adler v. Duval Co. School Bd., 112 F.3d 1475, 1481, n. 12 (11th Cir. 1997) (this Court recognized that only in rare circumstances to avoid manifest injustice is it appropriate to overlook noncompliance with Rule 28), Mendoza v. U.S. Atty. Gen., 327 F.3d 1283, 1286, n. 4 (11th Cir. 2003) (brief failing to meet requirements in Rule 28 may result in waiver or abandonment of issue).

## XIII. CHEATHAM'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED.

Cheatham claims that he was denied his right to a speedy trial because, he claims, he waived only the period of time from return of the Superseding Indictment to October 18, 2002, and the remainder of time between October 18, 2003 and the date of trial, May 5, 2003, exceeded seventy days. Notwithstanding Cheatham's failure to raise this claim with the district court, the claim is without merit.

The Superseding Indictment charging Cheatham was returned on August 15, 2002. On October 16, 2002, Cheatham filed a motion to continue the trial and, on October 18, 2002, waived his right to a speedy trial up to the filing of the waiver. (R2-110, 114). On October 18, 2002, Cheatham filed a motion to extend the time to file objections to the magistrate judge's ruling. (R2-113). Prior to the motion to extend time to file objections was ruled upon, on October 21, 2002, the district court granted the appellants' motion to continue and excluded the time period from October 22, 2002 to the new trial setting on January 27, 2003, in the interest of justice. (R2-116). On January 15, 2003, the district court granted the

17

from October 19, 2002 to October 21, 2002 is excludable because the district court granted the appellants' motion to continue and excluded that time in the interest of justice. 18 U.S.C. § 3161(h)(8)(A). The period of time from October 22, 2002 to January 27, 2003 is excludable because the district court granted the appellants' motion to continue and excluded that time in the interest of justice. 18 U.S.C. § 3161(h)(8)(A). The period of time from January 28, 2003 to March 10, 2003 is excludable because the district court granted the Government's motion to continue and excluded that time in the interest of justice. 18 U.S.C. § 3161(h)(8)(A). The period from March 10, 2003 to March 21, 2003 is excludable because Cheatham's motion to dismiss was pending. 18 U.S.C. § 3161(h)(1)(F), (J). The period of time from March 22, 2003 to April 17, 2003 is excludable because the Government's motion to sever was pending. 18 U.S.C. § 3161(h)(1)(F), (J). The period between April 22, 2003 and April 30, 2003 is excludable because the Government's motion to continue Cheatham's trial was pending. 18 U.S.C. § 3161(h)(1)(F), (J).

The period from April 18, 2003 to April 21, 2003, and from May 1, 2003 to May 4, 2003 is included in the speedy trial calculation. These seven days do not violate Cheatham's right to a speedy trial. 18 U.S.C. § 3161(c)(1).

XIV. THE TRIAL COURT DID NOT IMPROPERLY INFLUENCE THE JURY.

Appellants contend the trial court improperly influenced the jury by stating, during the course of ruling on an objection, that he presumed witness Wallace Salery had told law enforcement agents about Cheatham's involvement

EXHIBIT "D-4"

the case. *App. Br.*, at 43. They also contend that the trial court's reference to a proffer statement made during the course of ruling on an objection improperly influenced the jury. *App. Br.*, at 44. Finally, they claim the trial court improperly influenced the jury when it allowed witness Agent Gene Sisson to testify regarding a statement made by Cheatham.

These bald assertions are unsupported by any legal authority, with the exception of a few inapposite cases supporting a position related to whether and under what circumstances a trial judge may question a witness or comment on evidence. *App. Br.*, at 44-45. Further, the appellants do not explain how they were prejudiced by the court's statements or rulings. Accordingly, as the appellants' brief does not comport with the requirements set forth in Rule 28, Fed. R. App. P., the appellants' argument fails. See Adler, *supra*, Mendoza, *supra*.

Nonetheless, the trial judge did not improperly influence the jury. A conviction should not be reversed "based upon comments of the trial judge unless the comments are so prejudicial as to amount to denial of a fair trial." United States v. Ramos, 933 F.2d 968, 973 (11th Cir. 1991). An exception to this rule would be where a judge's comments demonstrate a pervasive bias and prejudice to a degree that it unfairly prejudices a party. Id. The comments made by the trial judge complained of by the appellants showed no bias or prejudice, nor were they so prejudicial that they denied the appellants a fair trial.

Cheatham's Waiver of a Speedy Trial appears at Doc 114, Pp 1, 2, wherein Cheatham stated,

> . . . "further that the Defendant has been advised of the foregoing, and by his signature below (in bold) **expressly waives his right to a speedy trial** only up to and through the date of this response and the re-settting of the trial in this court premised upon the Motion to Continue filed by the Defendant and not thereafter."

This was dated October 18, 2002. The trial was re-set for January 2003 and then continued again. Cheatham's first trial occurred on May 5, 2003. Therefore, seventy (70) days expired, thereby violating Cheatham's fair trial rights

> "A.    SPEEDY TRIAL
>
> [1,2]  This court reviews claims under the Speedy Trial Act (Act) *de novo.  United States v. Twitty*, 107 F.3d 1482, 1488 (11th Cir.), *cert. denied*, -- U.S. --, 118 S.Ct., 253, 139 L.Ed.2d 181 (1997).  The Act provides that when a defendant enters a plea of not guilty, "the trial . . . shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date is later."   18 U.S.C. § 3161(c)(1)."
> *U.S. v. West*, 142 F.3d 1408, 1412 (11th Cir. 1998).

16.    Whether the trial court improperly influenced the jury by its comments, thereby prejudicing Cheatham.

42

EXHIBIT "E-5"

With all due respect to the trial court, there were two occasions where the trial court elicited testimony not provided until the Court's question. The first was on cross-examination of Wallace Salery. At TR2 R1 Pg 62, Wallace Salery was being cross-examined about what Salery told Officer Sisson when they met in January 2003. The question was,

**Q:** "You told them about Carter?"

**A:** "Yes, sir."

**Q:** "Who else did you tell them about?"

**AUSA Brown:** "Objection"

**Court:** "Unless it is you told them about Carter and whoever else did you tell them about."

**Mr. Bell:** "Yes, sir."

**Court:** "I presume that he told them about Mr. Cheatham."

**Madison:** "I am going to object to that presumption."

**Court:** "You can clarify that - but objection overruled."

**A:** "About Mr. Cheatham."

The trial court provided the answer for the witness on this occasion.

The second occasion appears at TR2, R-3, Pp 549-550, which was as follows:

**Q:** "Carter was arrested. Did he make any statements?"

43

**A:**   "Yes."

(Objection Was Made)

**Court:**  "Sustained. To the extent that they would ask anything that would be in proffer."

**Madison:** "Judge, may we approach? With all due respect, I do not believe it is appropriate for the Court to be alluding to the proffer in the presence of the jury."

**Court:**  "I don't know that there's any other way."

**Madison:** "Well, you can do it outside of the presence of the jury."

**Bell:**   "It should not be made to the jury."

Motions for mistrial were made and denied.

The third occasion was TR2, R-3, Pp 555-563. There, the Court allowed Officer Sisson to provide testimony (not provided at Cheatham's first trial) that Cheatham, on the way to the headquarters broke down crying and began begging to allow him to assist himself and the Government in investigating his suppliers. This was allowed over objection and notwithstanding that there were no notes regarding this event, as well as that Cheatham had been mirandized and said he wanted an attorney.

> "[4-6] A trial judge is, however, more than a mere moderator and is under a duty to question witnesses and comment on evidence when it appears necessary. *United States v. Harris,* 720 F.2d 1259, 1260-61 (11th Cir.1983); *United States v. Bartlett,* 633 F.2d 1184, 1188 (5th Cir.),

44

*cert. denied*, 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 91 (1981).

[1] The trial court may interrogate a witness to clarify his testimony or to insure that a case is fairly tried. *Manchack v. S/S Overseas Progress*, 524 F.2d 918, 919 (5th Cir.1975). On the other hand, a trial judge improperly interjects himself into the trial by questioning witnesses when the attorneys are competently conducting their cases. *United States v. Welliver*, 601 F.2d 203, 208-09 (5th Cir.1979); *United States v. Daniels*, 572 F.2d 535, 541 (5th Cir.1978).
*United States v. Block*, 755 F.2d 770, 775-76 (1985).

15. Whether the trial court erred in revisiting the suppression issue where Counts I and II of the original Indictment were suppressed (whether Carter's Fourth Amendment rights were violated).

Based upon the fact that Carter was outside of his vehicle at the time of the search of the vehicle; that Carter was patted down with no weapons having been found; that a thorough search of the car yielded no guns nor weapons; that Carter was then given a warning ticket; clearly established that the police officers no longer had reasonable suspicion to hold Carter nor search the car with a canine. Carter, at that point, was illegally seized/detained.

" . . . The exigent circumstances ceased to exist after the police made a cursory search of the occupants and the vehicle at the truck stop. Based on the district court's

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id* at 2209.

45

Court:    "That's preserved and the other was the admission of the documents that were not produced under the Standing Order."

Madison:    "and other objections on record is that Court has denied Special Instruction Number 3, being jury instruction requesting the Court to instruct the jury on the difference between cocaine hydrochloride and "powder" and "crack" cocaine." (TR2-R4-707, 709)

Madison:    "At the severed trial, the instruction was given on the difference between "powder" and "crack" and that became the law of this case." (TR2-R4-709)

### F.    OBJECTIONS AS TO JURY CHARGES

Charge on separate conspiracies (TR2-R4-758).

Madison:    "Same objection as previously noted and objection to the Court.

Court:    "You have noted your objection as to charges prior to my charge to the jury, you are re-incorporating those same objections."

Madison:    "That's correct, Your Honor." (TR2-R4-759)

### G.    AFTER THE JURY RETIRES

Court:    "We are on the record and I have a question, or note, from the jury, and the note reads as follows: 'We cannot come to a unanimous decision on Artrone Cheatham. We have concluded the verdict on the Defendant Carter, signed by the foreperson.  What says the Government as to receipt of the verdict on Mr. Carter, before concluding their deliberation on Mr. Cheatham?  And as to the issue of giving an Allen charge to the jury at this time."

Brown:    "Government wants Carter verdict and 11th Circuit Allen charge."

Madison:    "Object to any further Allen charge.  This is the second time this case has tried.  The first time it was severed.  They wound up with a hung jury.  This time they tried my Defendant with Co-Defendant and got another hung jury.  I think it's prejudicial to instruct the jury that they should find a verdict as it may impact a juror to change their mind."

16

Mr. Madison objected to any further Allen charge and moved to dismiss the case (TR2-R4-173).

Mr. Madison objected to exhibits remaining before the jury as the exhibits related to Carter and not Cheatham as previously conceded on the grounds that the exhibits are highly prejudicial to Cheatham (TR2-R4-790). Mr. Madison moved to exclude the exhibits from the jury's view. The concession was those exhibits pertained only to Carter and not Cheatham, therefore, to allow the jury to infer any basis or existence of those exhibits to support any inference of guilt or non-guilt would be inappropriate. After the finding of guilty of Mr. Carter, Mr. Madison was going to request that all the exhibits be removed from the jury's view because they had previously conceded those exhibits and documents pertained only to Carter.

Court:     "Request is denied. Mr. Brown, do you contend that any of the evidence that is referred to by the jury's note, specifically, Government's exhibits 3, 9, 11, 14 and 16, was supported by any o the evidence presented by the Government?"

Brown:     "I would agree that **Agent Sisson testified that it was his opinion that the evidence was not linked to Mr. Cheatham.** . . " (TR2-R4-791).

SECOND JURY NOTE

17

EXHIBIT "H-9"

Court:    "Ms. Johnson, I have another note from the jury and I will read it so that I can ensure that it is accurate. 'We need a clarification on the following Government exhibits - 3, 9, 11, 14, 16. These reports are on evidence presented against Jimmy Carter. We would like to know why Artrone Cheatham's name is on the "file title". It's signed Betty Johnson."

The Court ruled that that evidence was withdrawn from the evidence that the jury will consider in the case against Artrone Cheatham and the jury was told to continue their deliberations without regard to those exhibits (TR2-R4-793).

The jury subsequently returned with a guilty verdict against Artrone Cheatham on the charge of 50 grams or more (TR2-R4-795). Request for special interrogatories was denied (TR2-R4-796).

18

EXHIBIT "I-10"

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

**FILED**

3:10

JUN 19 2003

## NOTE FROM THE JURY

DATE: 19 June 03

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

CASE NO. 02-7-N

STYLE OF CASE: U.S.A. vs. JIMMY CARTER, JR. & ARTRONE CHEATHAM

We can not come to a unanamous
decision on Antrone Cheatham.

We have concluded the Verdict
on the defendent Jimmy Carter

Betty Johnson

FOREPERSON

252

EXHIBIT "J"

16



1    buyer/seller relationship. He testified without question and
2    without doubt that he never saw Cheatham cook any crack
3    ~~cocaine. He testified he saw Carter but he said Carter was~~
4    cooking it for him too.
5              All that too dealt with before 1997 or before 1999.
6    The only testimony out of two trials presented against my
7    client, Artrone Cheatham, was a generalized statement
8    provided through the testimony of Salary that he sold -- I
9    sold him 30 kilos of cocaine in 1999. That's it. He doesn't
10   say he came every so often or he came this, he came that.  He
11   doesn't even identify with particularity any particular sale
12   that occurred during that time period. He could have said Don
13   Madison -- I sold Don Madison 30 kilos of powdered cocaine
14   and it would be me sitting here right as we speak today
15   defending the charges based upon Wallace Salary's testimony.
16             There's no when, there's no how, there's no to whom.
17   There are no facts to substantiate any of Salary's sales to
18   Cheatham other than the fact that he is grasping some figure
19   out of the air and throwing it out to the jury. The crack
20   cocaine and the only cocaine attributing or relating any
21   information concerning my client regarding crack cocaine by
22   Wallace Salary is 1997 and 1998 which is prior to the rise of
23   the conspiracy.
24             A while ago when I raised my objections I also read
25   the definition from the guidelines as to what cocaine base

17

was cited from the case, I think it was U.S. versus

Simpson -- yes, sir -- with respect to testimony provided in

3  that case where the 11th Circuit reviewed testimony of

4  another trial where they tried to attribute cocaine to a

5  Defendant which was prior to the time that the conspiracy

6  began, and the 11th Circuit said no, you can't do that. In

7  U.S. versus Simpson, the Court said no, that occurred before

8  the conspiracy and therefore it can not be used against this

9  Defendant.

10      That's precisely what we have in this case. The only

11 crack cocaine offered against my client occurred -- or

12 testimony was '97, '98, which was prior to the commencement

13 of the conspiracy, the alleged conspiracy according to the

14 indictment. There was no common goal discussed. Salary

15 provided no testimony as to whom they sold it to or to whom

16 Mr. Cheatham did. There was no testimony as to how they

17 divided the proceeds of these transactions. There's no joint

18 enterprise, there's no factual basis for any joint

19 enterprise.

20      You know, the only thing we have got is, the first

21 trial they tried to prove my client was related in some way

22 to some guy named Cappachino and another guy named Curalt or

23 some other individuals. Well, at the second trial they try to

24 prove my guy is a continuation of the Salary conspiracy.

25 That's multiple conspiracies. They are proving a different

... .... carter would cook crack cocaine for himself and Mr.

Cheatham.

3    In reviewing the case that has been submitted by the

4    defense, case of United States versus Darrell Simpson, cited

5    at 228 F.3d 1294, the Court finds that the argument of the

6    Defendant, although accurate to the facts contained in this

7    case, being the Simpson case, it does not necessarily -- I do

8    not find that the argument of counsel is persuasive to the

9    facts of this case, United States of America versus Cheatham.

10    In the Simpson opinion the 11th Circuit pointed out

11    that conduct which preceded a conspiracy by some four years

12    and also involved other individuals not involved in the

13    conspiracy for which the Defendant was ultimately convicted

14    should not have been included as relevant conduct for the

15    purposes of sentencing. I would agree.

16    In this case, however, the testimony has been

17    consistent by Mr. Salary that the purchase and the

18    arrangement for the manufacture of cocaine base from the

19    powdered cocaine which preceded the date of the conspiracy

20    period between January, 1999 and January of 2002 was

21    consistent with the brief period of time referenced in the

22    testimony of Mr. Salary which dated back as early as 1997. So

23    the Court finds that a time period of two years or less in

24    which the conduct seems to be consistent as far as the

25    involvement of the Defendant in this case with the same

individuals of the conspiracy for which he was charged is relevant conduct, and the Court finds that that quantity will be considered in sentencing in this case.

4    MR. MADISON: Judge, may I take one exception? You

5  just referred to certain excerpts of the trial testimony at

6  page 199 and then going on over to page two hundred the

7  specific question was asked, nothing -- talking to Salary, it

8  says okay, I sold him crack in '97, sold him crack, that was

9  in '97, nothing from '99, 2000, 2001, you were in jail in

10  2000, most of the year 2000. Answer, 2000 I was in jail. I

11  sold him in 1999 -- I sold him -- continuing on page 200 --

12  mostly powder, all powder when it came to Mr. Cheatham, but

13  in '98 and '97 I sold him crack. So the question, you didn't

14  sell him any crack in 2000. Answer was, no, sir.

15    THE COURT: Although -- go ahead.

16    MR. MADISON: But that was my point, Your Honor, the

17  government's case in chief is based strictly on the relevant

18  conduct and not on evidence produced during the term of the

19  conspiracy. That's why --

20    THE COURT: And the 11th Circuit may agree, Mr.

21  Madison. I think I have made it clear I want to give you

22  every opportunity to secure the record for the benefit of

23  your client, and I think that I have done that.

24    MR. MADISON: Yes, sir.

25    THE COURT: The jury has found that your client was

EXHIBIT "K-12"
Case 2:06-cv-00210-MEF-CSC    Document 2-2    Filed 03/03/2006    Page 22 of 25
Case 1:05-cv-01016-MEF-CSC    Document 2-3    Filed 10/24/2005    Page 1 of 4

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**FILED**

JUN 19 2003

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA,        )
                                 )
    v.                           )
                                 )
ARTRONE CHEATHAM,                )      CR. NO. 02-07-N
    a/k/a "MOOCHIE"              )
                                 )

## VERDICT

1.    We, the Jury, find the Defendant Artrone Cheatham:

    _____    Not Guilty
    ____X_____    Guilty

as charged in Count One of the superseding indictment.

[NOTE: If you find the Defendant "Guilty" as charged in Count One, proceed to
paragraph 1(a) below. If you find the Defendant "Not Guilty" as charged in Count One,
you need not consider paragraph 1(a) below, but should proceed to date and sign the
verdict.].

1(a).    We, the Jury, having found the Defendant guilty of the offense charged in Count
One, further find with respect to that Count that he conspired to possess with
intent to distribute the following controlled substance in the amount shown (place
an X in the appropriate box):

            Cocaine base ("crack" cocaine) - -
            (i)      Weighing 50 grams or more             ☒
            (ii)     Weighing 5 grams or more              ☐
            (iii)    Weighing less than 5 grams            ☐.

SO SAY WE ALL.

Date: 19 June 03                    _Betty Johnson_
                                    Foreperson

257

"EXHIBIT(  )"

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA    )
                                  )
        v.                      )
                                  )   CIVIL ACTION NO. 2:05cv61-F
JIMMY CARTER, JR.        )
  *and*                   )
ARTRONE CHEATHAM.    )

ORDER

The movants, through counsel, have filed a pleading styled as a "*Motion to Set Aside and/or Vacate Sentence; or in the Alternative Motion to Amend*" (Doc. 1), wherein they challenge the sentences imposed upon them by this court in 2003 for violations of various federal controlled substance laws.

In challenging their sentences, the movants seek to utilize the provisions of Rule 35 of the Federal Rules of Criminal Procedure. However, that rule does not authorize an attack on the sentences in this case. Rule 35(a), *Fed.R.Crim.P.*, provides that "[w]*ithin 7 days after sentencing*, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." (Emphasis added.) Sentencing for both movants took place on September 29, 2003. The present motion was filed on January 24, 2005. Thus, assuming (without so finding) that the movants set forth claims falling under the ambit of Rule 35(a), an attempt to challenge their sentences under that rule would be untimely. Furthermore, Rule 35(b), *Fed.R.Crim.P.*, provides for the reduction of a sentence, "[u]pon the government's motion," based upon a defendant's providing "substantial assistance in investigating or prosecuting

another person." Consequently, Rule 35(b) does not afford the movants a vehicle for attacking their sentences.

The movants, alternatively, move to "alter, vacate or amend the sentence pursuant to Title 28 U.S.C. 2255." A review of the claims presented by the movants indicates that they seek relief from this court that is appropriate only under the remedy provided by 28 U.S.C. § 2255. Accordingly, the Clerk of this court is hereby DIRECTED to:

1. Open two (2) separate civil actions -- one for each movant – under 28 U.S.C. § 2255. The Clerk is advised that the case number of the present civil action shall be assigned to Jimmy Carter, Jr.;

2. Assign the newly opened case to the Magistrate Judge and District Judge to whom the instant case is assigned;

3. Place a copy of the jointly filed motion in the newly opened case file; and

4. Refer these case files to the appropriate Magistrate Judge for further proceedings upon completion of the foregoing directives.

Done this 14th day of April, 2005.


___   /s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

2

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO: 2:05CV61-F |
| | ) | |
| JIMMY CARTER, JR. | ) | |
| and ARTRONE CHEATHAM. | ) | |

## MOTION TO WITHDRAW AS COUNSEL;
## MOTION TO WITHDRAW PETITION UNDER 18 U.S.C. 2255

COMES NOW Donald G. Madison, the undersigned counsel for Jimmy Carter, Jr., and

respectfully moves this Honorable Court to allow him to withdraw as counsel for Mr. Carter

(hereinafter referred to as the Defendant Carter). Additionally, counsel also files a Motion to

Withdraw the Petition previously filed on behalf of the Defendant Carter which was filed as a Joint

Motion to Set Aside and/or Vacate Sentence; or in the Alternative, Motion to Amend only as to the

Defendant Carter. In support hereof, counsel would show unto this Honorable Court the following:

1.      That Artrone Cheatham and the Defendant Carter filed a Joint Motion to Set Aside

and/or Vacate Sentence; or in the Alternative Motion to Amend on or about January 24, 2005 in

Case Number CR-02-07-N. Paragraph 1 of the Joint Motion stated that the Motion was filed

pursuant to Rule 35, *Federal Rules of Criminal Procedure*[1]. Paragraph 1 of the Joint Motion stated

that Rule 35 allowed for the filing of a Motion to Vacate and/or Amend the sentence when a new

ruling was issued by the United States Supreme Court which modified the case law and rulings upon

─────────────

[1]The undersigned counsel may have erroneously denoted the Motion as a Rule 35 motion
as opposed to a Rule 44 Request for Rehearing.

1