IN THE UNITED STATED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | CASE NO.: CR.NO.02-07-N |
| ) | |
| ARTRONE CHEATHAM, ) | |

**AFFIDAVIT AND RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE AND/OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY FILED BY ARTRONE CHEATHAM**

Pursuant to this Court's Order dated the 15th day of March, 2006, the undersigned Donald G. Madison hereby submits his Affidavit as required by the Court.

**STATE OF ALABAMA  )**

**MONTGOMERY COUNTY  )**

**AFFIDAVIT OF DONALD G. MADISON IN RESPONSE TO
§ 2255 MOTION OF ARTRONE CHEATHAM**

BEFORE ME, the undersigned Notary Public in and for the State of Alabama at Large, personally appeared Donald G. Madison, who after first being duly sworn by me upon his oath, did depose and say as follows:

"My name is Donald G. Madison.  I am over the age of nineteen years and a resident of Montgomery County, Alabama. I am a licensed attorney licensed to practice law in Alabama

1

since April, 1984. My principal office is located at 418 Scott Street, Montgomery, Alabama 36104. I represented Artrone Cheatham shortly after the time of his initial arrest in the criminal case where he was indicted under a Supersedeas Indictment with Jimmy Carter, Jr., his Co-Defendant, in Case Number CR No. 02-07-N. I, therefore, have personal knowledge of the facts hereinafter contained.

Appearing at page 7 of 38 pages of his Statement of Jurisdiction, the Petitioner Cheatham erroneously stated therein that the one (1) year period of limitation for the filing of a 28 U.S.C. § 2255 Motion commenced on March 7, 2005. This is incorrect. The undersigned counsel filed a Petition for Rehearing pursuant to Rule 44.2 in the United States Supreme Court, Supreme Court Case Number 04-1008, which rehearing was denied on June 20, 2005.

Therefore, the one (1) year period of limitation for the filing of a 28 U.S.C. § 2255 petition did not begin to run until said date.

On page 1 in the Statement of the Case of said Petition, there was an omission of the suppression motion filed on behalf of Cheatham which was granted. Thereafter, the possessory counts remained only as against the Co-Defendant

Carter (the conspiracy remained against Carter and Cheatham), which possessory counts in the Indictment against Carter were subsequently discovered (from persons aiding the United States government in the claims against Carter) that none of the possessory counts in the Indictment, or the cocaine charged therein, had anything to do with Cheatham.  This fact was stipulated at Cheatham's first trial and in the second joint trial with Carter (i.e., the government stipulated that none of the physical evidence which they presented at the joint trial of Cheatham and Carter had anything to do with Cheatham).

On page 2 of the Statement of the Case, Cheatham acknowledges several appeals made on Cheatham's behalf, but misrepresents that numerous errors were made by counsel.

The first issue presented with respect to ineffective assistance was the failure to request a <u>James</u> hearing.  The necessity for a <u>James</u> hearing under <u>U.S. v Alvarez</u> had pretty much been alleviated by <u>Bourjouily v. United States</u>, 483 U.S. 171, 182-184 (1987).  In fact, Cheatham argued in his Eleventh Circuit Brief that the United States Supreme Court case of <u>Crawford v. Washington</u> (cited then as 541 U.S. ___ (2004) in Cheatham's Petition for Rehearing *en banc*) stood for the

proposition that the United States Supreme Court had rejected <u>Bourjouily v. United States</u> and that the Eleventh Circuit should now uphold its prior dictate stated in <u>U.S. v. Alvarez</u> which incorporated <u>United States v. James</u>. This argument the Eleventh Circuit and the United States Supreme Court rejected.

<u>U.S. v. Alvarez</u>, relied upon by Cheatham, had been replaced by the logic of <u>Bourjouily</u> and, therefore, the allegation is without merit.

Notwithstanding, there were various other issues raised pertaining to the co-conspirators' statements or admissions of the same which were raised in a different context other than the <u>U.S. v. James</u> issue, which adequately brought to the Eleventh Circuit's and the United States Supreme Court's attention of the issue of Cheatham's participation in the alleged conspiracy. (See Issues 8 and 10, original Appellants' Brief to the Eleventh Circuit Court of Appeals, appearing at pages 38, 39 and 41-43). Issue 10 alleged that the use of the Salery testimony represented a constructive amendment to the Indictment where Cheatham was originally charged with conspiracy with Carter (and the first trial, the Haitians) primarily as a result of the drugs which had been seized from Carter and were the possessory counts against Carter in the

4

Indictment.

Issue 8 was a right to confrontation argument raised (pp. 38-39, United States v. Costa, 11<sup>th</sup>Cir. 31 F.3d, 1073.

Notwithstanding, all the matters other than the fact of the James hearing on which Cheatham relies in Issue 1 were raised in one form or another in the Appellants' Brief and denied by the Eleventh Circuit panel; denied by the Eleventh Circuit *en banc*; denied by the United States Supreme Court; and denied on a Request for Rehearing in the United States Supreme Court.

With respect to Issue 2 regarding the Sixth Amendment right to assistance of counsel, whether there was sufficient evidence to support a conviction, Cheatham argues that the undersigned counsel was ineffective for not attacking the issue of a lack of evidence to support the conviction. Undersigned counsel would submit that a Motion for Judgment of Acquittal was made at the close of the government's case and again at the end of the trial. Said Motion raises the sufficiency of the evidence. The Trial Court, when it denied said Motions, ruled that the evidence was sufficient to carry the matter to the jury over the objections which had been submitted by Cheatham.

Cheatham cites various cases dealing with the conspiracy under Section 846. The undersigned counsel may not have raised the specific cases cited by Cheatham, however, counsel did file at the close of the government's case, a motion for judgment of acquittal(TR2-R3-689-694) addressed at page 16 of the Appellants' Brief. The undersigned also submitted a Motion for a Verdict of Acquittal at the close of all the evidence which is referred to at page 17 of the Appellants' Brief. Concerning the sufficiency issue, the standard was stated with respect to Issues 10 and 14 appearing at page 22 of the Appellants' Brief. The sufficiency arguments in the Brief were 3 (alleging that a fatal variance occurred between the Indictment and proof) appearing at pages 29-30; pages 30-34; Issue 6, Constructive Amendment to the Indictment; Issue 10, pages 41-43, particularly page 42 where the statements of Salery attributed to Carter were contested; Issue 12 with respect to the Motions for Judgment of Acquittal, pages 45-46 of Appellants' Brief.

Cheatham's Issue 3 in his 28 U.S.C. 2255 Motion apparently arose by something quoted by the Assistant United States Attorney Todd A. Brown in his Appellee's Brief referring to bald assertions unsupported by any legal

authority pertaining to the Trial Court's improperly influencing jury.

Cheatham uses this assertion in the Appellee's Brief to allege that the undersigned was ineffective. The issue of the Trial Court improperly interjecting its influence in the proceedings was raised in Issue 16, pages 47-49. The undersigned counsel noted that there were two (2) occasions where the Trial Court had alluded to testimony not provided until the Court's questioning. At page 48 of Cheatham's Eleventh Circuit Appellants' Brief, he questioned Salery about whom 'else did he tell them (the police officers) about'. The Court submitted,

    The Court:    "I presume that he told them about Mr. Cheatham."

    Madison:    "I'm going to object to that assumption."

    The Court:    "You can clarify that – but objection overruled."

Mr. Salery then testified about Mr. Cheatham.

The second occasion also appears at page 48 of the Brief when the police officer was questioned whether or not Carter made any statements, the Court stated:

    The Court:    "Sustained. To the extent that they would ask anything that would be in proffer."

    Mr. Madison:    "Judge, may we approach? With all due

>respect, I do not believe it is appropriate for the Court to be alluding to the proffer in the presence of the jury."

Motions for mistrial were made and denied as noted at page 48 of the Appellants' Brief.

The third objection was where Agent Sisson apparently volunteered, without any documentation whatsoever to support it – including his own field notes, that purportedly Cheatham on the way to headquarters broke down and began crying, begging to assist himself and the government in investigating his suppliers (page 49, Appellants' Brief).

Therefore, other than Cheatham's citing AUSA Todd A. Brown's Appellee's Brief language relevant to the bald assertion asserted by Assistant United States Attorney Todd A. Brown in the Brief on behalf of the government, counsel for Cheatham did provide appropriate citations to not only the specific evidence to which objection was made, but also reciting cases in support of that in the Appellants' Brief.

At page 15 of his Petition, Cheatham attempts to argue something pertaining to procedural default; however, procedural default is not applicable to any issue which Cheatham raised throughout the motions filed by Cheatham before trial; after trial; in his Appellants' Brief; in his

Petition for Rehearing *en banc*; in his Petition for Writ to the United States Supreme Court; and request for Rehearing *en banc*. There was no issue of procedural default on any of the claims raised by Cheatham because they were appropriately and repeatedly raised at every level of his prosecution.

Cheatham's Issue 4 was prosecutorial misconduct. At page 16 of Cheatham's 28 U.S.C. 2255 Motion, this issue involving the government as opposed to an ineffective assistance claim.

The undersigned Counsel would only add that when the undersigned counsel first received the case file, all of the witnesses seemed to be saying the same thing which was that they each were repeating what Co-Defendant Carter had allegedly said in the case agent Gene Sisson's statement regarding Carter's proffer statement. Counsel to this day believes that the witnesses all reviewed Carter's proffer statement. Counsel, however, has little unsworn evidence to support this as of today's date. Counsel believes the counseling of witnesses' claim is supported by a review of the first trial of Cheatham when reviewing two (2) of the witnesses which the government produced other than Salery, which two (2) witnesses (Abraham and Baldwin) were attempting to link Cheatham to a Haitian conspiracy. The witnesses could

9

not remember what the undersigned counsel believes that they were supposed to testify to. Salery apparently did a much better job because he was called again to testify at the second trial of Cheatham where the other witnesses were not.

The fifth objection of Cheatham pertains to an ineffective assistance claim premised upon an attack of the element of the amount of cocaine for which Cheatham was sentenced. Cheatham raised several issues regarding his sentencing on the amounts attributable to him by Salery at sentencing and on appeal. As a matter of fact, counsel cannot understand why the United States Supreme Court did not grant relief on the U.S. v. Booker argument. The facts are almost identical as to sentencing (i.e., more than fifty (50) grams). Cheatham argued as acknowledged that that testimony was relevant conduct under United States v. Simpson quoted by Cheatham at page 21 of his 28 U.S.C. 2255 Motion. However, Cheatham, in his Eleventh Circuit Appellant Brief, raised in Issue 3, pages 29-34 of his Brief the issues of fatal variance as to the finding by the jury wherein Cheatham was alleged to have sold powder and not crack. More importantly Issue 3(C) in Cheatham's Appellants' Brief was the issue raised at page 32 which argued that pursuant to Apprendi in order to sentence

the Defendant under 841(b)(1)(b) instead of 841 (b)(1)(c) catch-all statutory maximum of twenty (20) years, a drug quantity must be treated as an element charged in the indictment submitted to a jury and proved to a jury beyond a reasonable doubt.

This Apprendi argument was preserved at sentencing, as well as was raised in Appellants' Brief which basically was succeeded by the U.S. v. Booker issue. The Apprendi *id* issue was converted to a U.S. v. Booker issue as submitted to the United States Supreme Court after the case was issued and before Cheatham's direct review process was finalized.

Cheatham also challenged the constructive amendment to the Indictment in Issue 6 at page 37 and again in Issue 10 at pages 41, 42 and 43, where Cheatham argued that because the government had conceded that none of the possessory counts against Cheatham as alleged in the Indictment had anything to do with Cheatham and that this was a stipulated fact, that therefore, Cheatham could not have been charged in the Indictment with any possessory amounts.

Therefore, counsel clearly presented arguments and the facts to support the arguments challenging the jury verdict and the attributing by the Trial Court of a sentence for

11

cocaine exceeding fifty (50) grams of cocaine base only.

At page 32 of Cheatham's 28 U.S.C. 2255 Motion, Cheatham raised the U.S. vs. Booker argument. This was the Apprendi argument raised by Cheatham on his appeal prior to Booker being issued by the United States Supreme Court. The Apprendi argument raised by Cheatham at both sentencing and on appeal precluded a procedural default analysis in reviewing Cheatham's issues because Cheatham did, in fact, raise these issues at sentencing and in his Appellants' Brief. The Booker decision by the United States Supreme Court was issued in 2005. Notwithstanding, Cheatham raised the Apprendi issue prior to Booker being issued as well as raised U.S. v. Booker in his Writ of Certiorari filed with the United States Supreme Court, as well as in the Petition for Rehearing filed with the United States Supreme Court.

Cheatham attempts to argue at page 25 of his 28 U.S. C. 2255 Motion that the ineffectiveness was made *prima facie* by counsel's filing a Rule 35(a) Motion. Cheatham stated that filing was not requested, solicited nor authorized by the Petitioner. In fact, the undersigned counsel believes that it was this Court which ruled on said Motion. When the undersigned filed said Motion, there was one (1) day left in

the ninety (90) day period to file a Petition for Certiorari for cases under direct review. Notwithstanding that Cheatham filed his Petition for Writ of Certiorari to the United States Supreme Court timely which extended the period on direct review, Carter did not participate in the Petition for Direct Review. Therefore, Carter only had one (1) day left in which to file a pleading while still under direct review.

Counsel noted at the time that he filed the Rule 35 Petition, and even at the time that the same was withdrawn that the undersigned stated (page 26 of Cheatham's Petition),

"The undersigned counsel may have erroneously denoted the Motion as a Rule 35 Motion as opposed to a Rule 44, Request for Rehearing."

Counsel could not put his hands on any case, law or otherwise substantiating that the Motion should have been filed as a Rule 35; however, counsel thought that he had read it in either the old 28 U.S.C. 2255 statute or had seen it somewhere in his research.

Counsel submits that the United States Supreme Court case of <u>Dodd v. United States</u> decided on June 20, 2005, addressed the filing of a Motion to Amend in both the holding on page 1, as well as Keynote 3. Justice O'Connor delivered the Opinion

13

and specifically referred to, at page 2 of the Petition

> "that 28 U.S.C. 2255 establishes a one (1) year period of limitation within which a federal prisoner may file a motion to vacate, set aside or correct his sentence under that section. That period runs from the latest of a number of events which are enumerated in paragraphs 1 through 4 of paragraph 6 of that section. Since this case involves paragraph 3 which provides that the limitation period begins to run on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

The Court held at page 4 of the Opinion...

> "As long as the conditions in the second clause are satisfied so that paragraph 6 (3) applies in the first place, that clause has no impact whatsoever on the date from which the one (1) year limitation period in paragraph 6(3) begins to run. Thus, if this Court decides a case recognizing a new right, federal prisoners seeking to assert that right will have one year from this Court's decision with which to file its 2255 motion."

The Court went on to note in Key 4 that the statutes of limitations make it difficult for applicant's filing a second or successive 2255 motions to obtain relief because the limitation period typically runs before a new rule of constitutional law made retroactive on collateral review by the Supreme Court becomes available.

However, counsel would point out that the Court acknowledged two (2) things applicable to the undersigned's

filing of the Rule 35 Motion which this Honorable Court rejected as not being filed within seven (7) days from the date of the judgment, and that is, that <u>Dodd v. United States</u> did not reject the proposition that a Motion to Vacate (Rule 35) was a proper vehicle for filing the claim; the United States Supreme Court held that even collateral review cases could be reviewed if it fell within the one (1) year period; so long as the Supreme Court made the ruling retroactive. In this case, the cases were still on direct review or still pending on direct review as stated in the Motions filed.

Therefore, while rejected by this Honorable Court, counsel believes that it was possibly the <u>Dodd</u> case which he had read which supported the undersigned's reasoning behind the filing of the Cheatham and Carter Rule 35 filings were in fact proper. In any event, counsel believes that the filings were appropriate and proper and filed prior to the time that direct review terminated; therefore, properly invoking the Court's jurisdiction to review the sentences based upon <u>United States v Booker</u> while the cases were still pending on direct review.

Finally, counsel would conclude that without adding it up, counsel was probably paid less than three thousand five

15

hundred dollars ($3,500.00) after trying both jury trials for Cheatham. Counsel was probably paid a little more than thirty-five hundred dollars ($3,500.00) in legal fees for filing Cheatham's Appellants' Brief. Counsel was not paid any further legal fee for the United States Supreme Court filings. Cheatham did pay for his expenses on appeal and the printing costs of the Supreme Court Writ and Request for Rehearing. However, counsel was paid probably around sixty-five hundred dollars ($6,500.00) in legal fees by Cheatham for two (2) jury trials; a substantial Appellants' Brief filed on behalf of Cheatham; for a Petition for Rehearing *en banc* filed on behalf of Cheatham; for a United States Supreme Court Writ prepared and filed on behalf of Cheatham; and for a Petition for Rehearing filed with the United States Supreme Court. While this may not be relevant, it certainly shows that counsel went out of his way in order to advance the proper arguments which counsel felt deserved to be made in order to attempt to overturn Cheatham's conviction. These efforts are quite the opposite of ineffectiveness. That still does not mean that counsel has to stomach the issues raised by Cheatham in his 28 U.S.C. 2255 Petition.

Finally, Counsel still feels that for Cheatham to receive

the sentence he received of 235 months where he had no prior felonies is simply a miscarriage of justice, particularly under the facts of this case; his conviction based upon hearsay testimony; as well as in lieu of the stipulation as to the physical evidence in the case."

FURTHER AFFIANT SAITH NOT.

AFFIANT:

S/Donald G. Madison
DONALD G. MADISON
418 Scott Street
Montgomery, Alabama 36104
Telephone (334) 263-4800
Facsimile (334) 265-8511
E-mail btjarvis1@bellsouth.net
ASB-5199-M68D

SWORN TO and SUBSCRIBED before me on the 4th day of April, 2006.

S/Brenda T.Jarvis
NOTARY PUBLIC
My Commission Expires 07/15/09

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Honorable Todd A. Brown
Assistant United States Attorney
Office of the United States Attorney
Middle District of Alabama,

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Mr. Artrone Cheatham
11101-002
FCI
Post Office Box 9000
Forest City, Arkansas 72336

                                      S/Donald G. Madison
                                      DONALD G. MADISON
                                      418 Scott Street
                                      Montgomery, Alabama 36104
                                      Telephone (334) 263-4800
                                      Facsimile (334) 265-8511
                                      E-mail btjarvis1@bellsouth.net
                                      ASB-5199-M68D