Page 515

```
1   IN THE UNITED STATES DISTRICT COURT FOR
2        THE MIDDLE DISTRICT OF ALABAMA
3             NORTHERN DIVISION
4
5
6   UNITED STATES OF AMERICA
7
8        Vs.          CR. NO. 02-07-N
9
10  JIMMY CARTER, JR. and
11  ARTRONE CHEATHAM
12        *  *  *  *  *  *  *  *
13              JURY TRIAL
14        *  *  *  *  *  *  *  *
15   Before Hon. Mark E. Fuller, Judge,
16   and a Jury, at Montgomery, Alabama,
17       Commencing on June 16, 2003
18        *  *  *  *  *  *  *  *
19          VOL. III (June 18, 2003)
20  APPEARANCES: For the Government: Todd A. Brown,
21                        Assistant U.S. Attorney
22   For the Defendant, Carter: Maurice S. Bell,
23                        Attorney at Law Federal
24   For the Defendant, Cheatham: Donald G. Madison,
25                        Attorney at Law
```

Page 515

1  (The above case coming on for trial at Montgomery,
2  Alabama, June 16, 2003, before Honorable Mark E. Fuller,
3  Judge, and a Jury, the following proceedings were had outside
4  the presence of the jury on June 18, 2003, commencing at 9:05
5  a.m.:)
6      THE COURT: Mr. Madison, I understand you have
7  something you want to bring up before the Court?
8      MR. MADISON: Yes, sir. I had previously advised
9  the Court that we had made some objections based upon the use
10 of the Defendant Carter's proffer statements and I advised
11 the Court at that time I would supply those excerpts from the
12 grand jury proceedings where those statements were utilized,
13 and I have made copies of those now and I wanted to put those
14 of record. And what I have done is I have made a copy of the
15 first and last page of the transcripts of the proceedings
16 that were provided to me by Mr. Brown. The first being
17 January the 29th, 2002 and pages one, which is the cover
18 page, page five, page six, and the last page being the
19 certification of -- the reporter's certificate, page 15. I
20 would like to offer -- I don't believe we have offered any
21 exhibits, so the Defendant -- be 1. And -- are you waiting on
22 me, Judge?
23     THE COURT: Yes, I can listen, go ahead.
24     MR. MADISON: The first exhibit, Defendant's Exhibit
25 1 being the January 29th, 2002 proceedings dealt with the

Page 516

1  indictment only as to Carter. The second, which is what I
2  have marked as Defendant's Exhibit 2, are the excerpts of the
3  grand jury proceedings occurring on August the 15th of 2002
4  which is where the superceding indictment was issued which
5  added the conspiracy. I have got again the first and last
6  pages of that particular transcript being pages one and 12
7  respectively. And I should clarify that too, the first one I
8  gave you was the testimony of Officer Sisson, and as well as
9  the August 15th, 2002 testimony as well being the testimony
10 of Officer Sisson. And included in Defendant's Exhibit 2 are
11 pages five, six, eight and again the last page being the
12 reporter's certificate, 12.
13     THE COURT: And you are going to mark these exhibits
14 for the record; is that right?
15     MR. MADISON: Yes, sir, I marked them as Defendant's
16 Exhibits 1 and 2 being offered as to our argument.
17     THE COURT: You already have a Defendant's Exhibit
18 1.
19     THE CLERK: They are wanting to do it Defendant
20 Carter's yesterday 1, and today Cheatham's, so I was going to
21 write the name under the number.
22     MR. MADISON: It might be joint, or do you want to
23 mark it Carter's 2 and 3 instead of Cheatham?
24     THE CLERK: Or joint.
25     THE COURT: We just need to clarify them for the

Page 517

1  record.
2      MR. MADISON: Two and three, Carter's 2 and 3.
3      MR. BELL: Right.
4      MR. MADISON: I am going to change this one to three
5  then, Your Honor.
6      THE COURT: Ms. Ernestine, make sure this is changed
7  to two; is that correct?
8      MR. BELL: Yes, sir.
9      THE CLERK: Which is two?
10     MR. MADISON: Two is the January 29th, 2002 and
11 Defendant's Exhibit 3 is August the 15th, 2002.
12     THE CLERK: And these are Defendant Carter's.
13     MR. MADISON: Yes, ma'am.
14     THE CLERK: I will write Carter under this one.
15     MR. MADISON: And I am writing Carter on this one.
16 And again, Your Honor, Rule 410, Federal Rules of Evidence,
17 states clearly our position is that any excerpt of the plea
18 statement, any statement made in the course of plea
19 discussions or negotiations are inadmissible in any civil or
20 criminal proceeding. Period.
21     THE COURT: I haven't heard any testimony that I
22 feel would be a violation of the limitations set forth in
23 Rule 410 of the Federal Rules of Evidence. But you have got
24 your motion. If this is a motion in limine, I will grant it.
25 If this is a motion to dismiss the indictment I have already

Page 686

1 the various other documentation that shows that the trash was
2 for 304 Payson Road, discarded bills and such.
3     THE COURT: That's what I wanted to ask you, was
4 there any other documentation addressed to either Mr. Carter
5 or anyone else that lived at that house in that trash can?
6     THE WITNESS: I can't specifically remember a name
7 but it was for 304 Payson Road.
8     THE COURT: Was any of that collected?
9     THE WITNESS: Yes, sir.
10     THE COURT: That's all I have.
11     MR. BELL: May I ask him real quick?
12 BY MR. BELL:
13 Q. Did you find any latex gloves in the house?
14 A. No, sir.
15 Q. No further questions. Wait a minute. And you found no
16 latex gloves in the -- discarded latex gloves in the trash
17 can.
18 A. No, sir, I did not.
19 Q. Was the trash can in the street or was it on the grass?
20 A. It was on the grass right at the edge of the curb.
21 Q. Okay. And you know who put it there?
22 A. No, sir, I sure don't.
23 Q. Did you take fingerprints of the trash can?
24 A. No, sir, I did not.
25 Q. Okay. Was there anything in the house that indicated

Page 687

1 that Carter owned that house?
2 A. Like a deed?
3 Q. Like a deed or mortgage or anything such as that.
4 A. No, there was not.
5 Q. Okay. I believe you introduced into evidence a document
6 showing a bank account.
7 A. For Sterling Bank, yes, sir.
8 Q. Okay. Was there anything in the trash can to show that
9 he owned the house?
10 A. No, sir, there was not.
11 Q. Okay. And I believe that that bank thing showed that
12 they put money in the bank; is that correct?
13 A. Well, it was just -- there was money in that account,
14 yes, sir.
15 Q. It was what, seven thousand dollars or whatever?
16 A. I don't remember specifically.
17 Q. In your opinion do drug dealers use an account like
18 that?
19 A. Yes, sir.
20 Q. Well, they try to hide their drugs, don't they?
21 A. Large sums of money they would try to hide, yes, sir.
22 Q. That's not large sums of money for a person who is in
23 business, is it? I bet you have it, don't you, in your
24 account?
25     THE COURT: Ask him a question, if he knows.

Page 688

1 Q. Seven thousand dollars is not a lot of money, it is?
2 A. It is an awful lot of money to me.
3 Q. How about to a drug dealer?
4 A. It's nothing.
5 Q. Right. And it's a lot of money to me too.
6     THE COURT: Anything else?
7     MR. BELL: I'm through.
8     THE COURT: Mr. Brown?
9     MR. BELL: I would like to reserve -- I mean, if
10 possible, to have him go forward.
11     THE COURT: Mr. Brown, anything from the government?
12     MR. BROWN: No, sir.
13     THE COURT: You may step down. Call your next
14 witness.
15     MR. BROWN: May I confer with the clerk for a
16 moment, Your Honor?
17     THE COURT: You certainly may.
18     (Pause)
19     MR. BROWN: At this time, Your Honor, the government
20 rests.
21     THE COURT: Ladies and gentlemen, I am going to --
22 when I instructed you Monday I instructed you there were
23 times that we would have to take up things out of your
24 presence. We have reached one of those times. You have just
25 heard that the government has presented everything that it

Page 689

1 intends to present in its case in chief. Before we move any
2 further into the trial of these cases we need to take up some
3 matters outside of your presence. And I am required to
4 instruct you and do instruct you not to discuss the case at
5 this time among yourselves or allow anyone to discuss the
6 case with you. Please leave your notes in your chair. If you
7 will step outside with the marshal, we will be back with you
8 momentarily.
9     (At which time, 3:31 p.m., the jury left the
10 courtroom.)
11     THE COURT: The record will reflect that we are
12 outside of the hearing and the presence of the jury. With the
13 government having announced that it rests are there any
14 motions to be made on behalf of either Defendant?
15     MR. MADISON: Yes, sir. The Defendant Cheatham moves
16 for judgement at the close of the government's evidence. And
17 the reasons that we move for judgment are, number one,
18 there's been no witness who has presented any evidence during
19 the period of time that the conspiracy is in effect or that
20 is alleged in the indictment that any crack cocaine was
21 attributed to my client, Mr. Cheatham. The indictment charges
22 in count one of the indictment that he conspired with Jimmy
23 Carter to sell crack cocaine. Officer Sisson testified that
24 counts two through five, being the possessory counts against
25 the Defendant Carter, had nothing to do with my client. Mr.

Page 690

1 Salary, when he was on the stand, testified that any crack
2 cocaine was prior to 1999. The period of the indictment is
3 '99 through 2002.
4 Furthermore, Mr. Sisson testified that Mr. Carter
5 was arrested on July the 25th of the year 2001. Any
6 conspiracy with respect to Mr. Carter would have terminated
7 on the date of his arrest. Additionally, Mr. Sisson -- I'm
8 sorry, Mr. Salary was incarcerated in February of the year
9 2000. Any testimony that he may have provided would have
10 terminated on the date of his arrest.
11 But the crux of the argument in any event is that
12 the government has failed to present by a preponderance of
13 the evidence or has failed to shift the burden to the
14 Defendant Cheatham with respect to the charge made under
15 count one of the indictment as to the conspiracy to sell
16 crack cocaine. There's absolutely no evidence before the jury
17 at this point in time that the Defendant Cheatham at any time
18 between January of 1999 and 2000, 2002 had anything to do
19 with crack cocaine, or the sale of 50 grams or more of crack
20 cocaine as charged in the indictment.
21 There are a number of other issues, Judge, I raised
22 in some early motions in the case, and without restating
23 those, basically I argued at one point in time there was a
24 jurisdictional defect and acquisition of jurisdiction of
25 Defendant Carter in the first place. The search warrant for

Page 691

1 Defendant Carter was issued by a Municipal Court judge in
2 Montgomery. Federal Rules of Procedure require that with
3 respect to any evidence in a federal case, and that is a case
4 initiated by officers under the guise of a federal
5 prosecution or where there's contemplation that the
6 prosecution is going to occur or to occur in Federal Court, I
7 think it's Rule 41, states that the warrant has to be issued
8 by a Federal Magistrate or by a state court of record.
9 Also submitted at the time that that original motion
10 was filed some case law, I think it was Title 15-15-3 Code of
11 Alabama, and it may not have, may have been a different Code
12 section, which also addressed the fact that Municipal Court
13 judges or that anything dealing with a Municipal Court judge,
14 something to do with the state court records, I don't have
15 that particular thing right now, but a Municipal Court judge
16 is not a state court of record, and therefore that the Court
17 didn't properly acquire jurisdiction over Mr. Cheatham in the
18 first place.
19 There are some other arguments. The fact that
20 the -- all the evidence that the government had at the time
21 of the original indictment, there was no new evidence offered
22 at the time they obtained the superseding indictment. The
23 conspiracy charge was added at the time the superseding
24 indictment was changed. I think it's Rule 7 of the Federal
25 Rules, there was no new evidence on which the superseding

Page 692

1 indictment was predicated. The government used the proffer
2 statements of the Defendant Carter in order to obtain an
3 indictment for conspiracy, therefore in violation of Rule
4 410, and one of the other rules I cited, I don't recall right
5 off the bat. The government illegally used evidence, the
6 Defendant Carter's proffer statement, in order to obtain the
7 conspiracy, and therefore directly used his statement against
8 him in order to obtain the superseding indictment which is
9 count one of the indictment.
10 Also the -- to the extent that the government would
11 attempt to utilize any of the -- I think they have already
12 conceded, and our position was in the severed trial they
13 conceded that counts two through five as to Cheatham were not
14 applicable to Cheatham. The record reflected that. The
15 testimony of Sisson also states that those counts aren't
16 applicable to Cheatham, therefore, there's no physical
17 evidence to support any charge made against the Defendant
18 Cheatham. So even if the -- there's nothing to prove the
19 quantity portions of the Apprendi standards for asserting
20 liability against my client under any drugs, possession of
21 drugs or otherwise.
22 I know I am not being fully -- I wasn't aware that
23 the government was going to terminate the prosecution at this
24 point in time so I guess I would just with the Court's
25 indulgence incorporate any prior argument that I have made in

Page 693

1 my motions to dismiss as if they were restated in full.
2 THE COURT: The Court adopts the same rulings that
3 it has adopted earlier in regard to your Motion for Judgement
4 of Acquittal under Rule 29 of the Federal Rules of Criminal
5 Procedure. The Court does find that should the jury believe
6 the testimony of Mr. Wallace Salary, there was testimony from
7 Mr. Salary which indicated that through the end of 1999 he
8 was still dealing with Mr. Carter and with Mr. Cheatham, as
9 many times as two to three times per week, and as well as
10 other testimony from Mr. Salary regarding his dealings with
11 Mr. Cheatham through Mr. Carter. And the Court finds that
12 there is evidence before the Court sufficient to sustain a
13 conviction. And as to your Motion for Judgement of Acquittal
14 it is denied.
15 MR. MADISON: Judge, may I --
16 THE COURT: I am sorry?
17 MR. MADISON: Were you finished?
18 THE COURT: Yes, sir.
19 MR. MADISON: Just with respect to that, then with
20 respect to your finding, the testimony was clear that
21 anything that Mr. Salary testified to in '99 as to my client
22 dealt solely with alleged powder, and not with respect to any
23 crack cocaine. He testified specifically when I asked him
24 because I presented him the testimony of the prior hearing
25 where he talked about nothing but powder in '99. He

Page 694

1 specifically said '96, '97, '98, not '99. So he provided no
2 testimony with respect to crack cocaine during the period of
3 time that the conspiracy is alleged in the indictment.
4    THE COURT: Any response, Mr. Brown?
5    MR. BROWN: The only response is, Your Honor, I
6 specifically asked on redirect what the agreement was of the
7 three individuals and it was powder would be converted into
8 crack cocaine.
9    THE COURT: That's what I recall Mr. Salary saying.
10 So should the jury elect to believe Mr. Salary's testimony I
11 find that the evidence would be sufficient to sustain a
12 conviction as to the conspiracy count charged in count one.
13 Anything else, Mr. Madison?
14    MR. MADISON: One other thing. And he also
15 testified that he never witnessed Mr. Cheatham convert crack
16 cocaine.
17    THE COURT: All of those things are matters of
18 argument. I am just saying matters of proof that the Court
19 would take note of in ruling on your Motion for Judgment of
20 Acquittal.
21    MR. BELL: I join in that motion on the conspiracy
22 count. I realize that my client is charged with some
23 substantive counts. I believe, Your Honor, that on three
24 point five grams that my client is charged with, and I
25 believe the testimony was by Mr. -- Officer Thornton that

Page 695

1 that was indicative of a possession of cocaine for personal
2 use. A small amount of it. And he said it could be
3 considered that. And, of course, one of my charges would be
4 for the lesser on that case. And for the Court to direct a
5 verdict of guilt on the three point five, there's sufficient
6 evidence by law to substantiate this motion.
7    Secondly, join Mr. Madison in a verdict of acquittal
8 in counts three -- I believe it's three and four, at 304
9 Payson. It would be four and five, Your Honor. Since the
10 evidence and the testimony, or the evidence clearly shows
11 that the property belongs to someone else, that he had no
12 interest in that property, that they did not show that he
13 paid any bills, they didn't show that he paid any electric
14 bills. The only thing is that they were in partners on an
15 automobile, but as far as the house was concerned where the
16 drugs were found, there were no fingerprints, absolutely
17 nothing, and that the four and five counts should be
18 dismissed because he had no proprietary interest in it.
19    As the Court knows, we filed a motion to suppress
20 only the counts at his house and his place of business and we
21 feel that those two counts at 304 Payson Place should be
22 dismissed. During -- the manner in which the police
23 department obtained the search warrants from a trash can,
24 which anybody can use and people do use it, all over
25 Montgomery, if their trash can is full, they use someone

Page 696

1 else's trash can. There's no fingerprints found or anything
2 in that trash can to indicate that Mr. Carter placed any of
3 the items in there. And so for that reason we ask that counts
4 four and five be dismissed because there's no connection
5 between the trash can and Mr. Carter. Not one iota.
6    And also -- we also ask that you dismiss on -- the
7 conspiracy count be dismissed. The only evidence there
8 indicates -- was from Wallace Salary, a convicted felon. He
9 stated he's doing it to get a Rule 35, and that was testimony
10 of someone suspicious. He would be subject to doubt. And I
11 think that that in itself would negate the conspiracy count.
12    THE COURT: The Court adopts the prior rulings that
13 it has made in the motions that you have filed prior to this
14 trial and your Motion for Judgment of Acquittal on the
15 conspiracy count, count one, as well as on the substantive
16 counts, counts two through four -- two through five, I'm
17 sorry, are denied. Is the defense ready to present its case?
18    MR. BELL: One other thing, Your Honor, I would like
19 to renew my motion to dismiss. I think that the Courts were
20 in error when my motion to dismiss was based on prosecutorial
21 misconduct in using the proffer statement also in -- to
22 obtain a superseding indictment.
23    THE COURT: Motion denied. And as a matter of
24 record, for your issue on search of the garbage can, the
25 Court has looked into that issue on its own and would cite

Page 697

1 for the record the Court of Appeals 7th Circuit opinion of
2 United States versus Redmond, cited at 138 F.3d 1109, finds
3 that the facts of this case are substantially similar and are
4 on all fours with the ruling by the 7th Circuit in that case.
5 And would cite that the Court finds that the search of the
6 residence located at 304 Payson Road was a valid search
7 following the officer's receipt of a search warrant in that
8 case.
9    MR. MADISON: Judge, may I just raise one more issue
10 about that?
11    THE COURT: Yes, sir.
12    MR. MADISON: A search warrant -- obviously stayed
13 away from that as far as putting it on the record in the
14 presence of the jury, but as far as the Court, the search
15 warrant is part of the Court's file but I believe there was a
16 misrepresentation contained therein that Mr. Carter owned
17 that property in order to obtain the search warrant. I think
18 the search warrant specifically affirmed that Carter owned
19 the residence, and I believe that the testimony here today
20 was that Carter did not own the residence, that Ms. Thomas
21 owned the property. And while it was not an intentional
22 misrepresentation it was a misrepresentation to obtain the
23 warrant.
24    THE COURT: Was there a motion to suppress filed on
25 the search warrant? By either Defendant?

## Page 698

1  MR. BELL: Your Honor, can I -- as I explained
2  before, I join in on that. We do not have a possessory
3  interest to have filed a suppression hearing on those two
4  counts.
5      THE COURT: Okay.
6      MR. BELL: On four and five. We do have a possessory
7  interest on the stop, but we are claiming that we have no
8  connection what so ever. We don't pay the rent, it's not our
9  house. Someone sells property. It's nothing that was
10 introduced that my client in any way paid taxes on that
11 house, paid rent on the house, utility, garbage, water,
12 anything what so ever.
13     THE COURT: I have ruled. Is the defense ready to
14 proceed?
15     MR. MADISON: Yes, Your Honor.
16     THE COURT: Let's bring the jury in.
17     MR. BELL: Yes, Your Honor.
18     MR. MADISON: I am not planning on putting on any
19 witnesses, are you?
20     MR. BELL: No.
21     THE COURT: Is the defense going to call any
22 witnesses? Do you want to take a minute or two to confer?
23     MR. MADISON: Yes, sir.
24     THE COURT: Do that very quickly.
25     (pause)

## Page 699

1      MR. BELL: We rest, Your Honor.
2      MR. MADISON: We rest too.
3      THE COURT: Okay. Do you renew your same motions?
4      MR. MADISON: Yes, sir, we renew our motions at the
5  close of our case being the same motions that were raised at
6  the close of all the government's -- or at the end of the
7  government's case. We would move for a Judgment of
8  Acquittal.
9      THE COURT: You can reserve your objections as you
10 stated them earlier and the same ruling for the Court. Mr.
11 Bell, do you reserve your same motions?
12     MR. BELL: Yes, Your Honor.
13     THE COURT: And the Court would adopt the same
14 findings and rulings from the Court. Now, one thing I wanted
15 to make sure on behalf of both Mr. Carter and Mr. Cheatham, I
16 wanted to make sure that you understand that you have a right
17 to testify, each of you, in this case. If you will please
18 stand, both of you. Mr. Carter, I am not going to put you
19 under oath, nor am I going to put you under oath, Mr.
20 Cheatham, just to make sure that you understand that the
21 right to testify or not to testify is your right, and your
22 right alone. And you are represented by attorneys here and
23 it is my understanding since no evidence will be presented
24 that each of you are choosing not to testify; is that
25 correct, Mr. Carter?

## Page 700

1      THE DEFENDANT: Yeah.
2      THE COURT: Is that correct, Mr. Cheatham?
3      THE DEFENDANT: Yes, sir.
4      THE COURT: And that's a decision made as a
5  voluntarily decision on each of your parts; is that correct,
6  Mr. Carter?
7      THE DEFENDANT: Yes, sir.
8      THE COURT: Is that correct, Mr. Cheatham?
9      THE DEFENDANT: Yes, sir.
10     MR. MADISON: Judge, could I ask that instructions
11 be given -- I think there's part of the instructions that
12 they are not exercising their right to testify.
13     THE COURT: Well, before we --
14     MR. BELL: Is it possible to have a discussion on
15 the jury charges?
16     THE COURT: Yes, that's what I was going to suggest
17 that we do. What are your feelings about arguing the case
18 today? Would you prefer to have our charge conference this
19 afternoon and then argue the case in the morning?
20     MR. MADISON: Yes, sir.
21     MR. BELL: I would prefer. It's up to Todd, how do
22 you feel?
23     MR. BROWN: I would prefer -- obviously prefer to
24 have the charge conference first but if we can get done in
25 time we don't have any objection to arguing this afternoon.

## Page 701

1      MR. BELL: We'd prefer tomorrow.
2      THE COURT: The time is shortly before 4:00 o'clock,
3  I think it would take at least 30 minutes to have a charge
4  conference. Why don't we bring the jury back in and excuse
5  them for the night. We can a have a charge conference in my
6  office and begin in the morning at 9:00 o'clock.
7      MR. BELL: Your Honor, I hate to be repetitive but
8  there's no evidence that the three point five grams that he
9  took to his house and brought it, that he used that for
10 distribution, and I think that's a matter of law. Nobody
11 testified to that other than Mr. Thornton, who stated it was
12 indicative of a lesser included crime of possession for one's
13 personal use. I would like that to --
14     THE COURT: Before we bring the jury in, this tape
15 that we had such an effort to get.
16     MR. MADISON: They didn't call the witness whom that
17 tape is applicable to, Judge.
18     THE COURT: It was my understanding that the defense
19 was insistent on the tape being produced while Mr. Salary was
20 on the stand testifying, and it had something to do with
21 impeaching Mr. Salary, and I just want to make sure that I
22 understand on this record that the tape is now available and
23 has been available to you. The defense is choosing not to
24 utilize the tape in any further fashion, and even asked the
25 Court to take it home and listen to it, and I have had it

## Page 702

1 turned over to the Court by Ms. James.
2     MR. BELL: May we take it home and listen to it?
3     THE COURT: You have had all the opportunity to
4 listen to it that you can. My concern is, it was represented
5 to this Court that Ms. James was wilfully withholding
6 information from the defense that was beneficial to the
7 impeachment of Mr. Salary, and I am not so sure that's an
8 accurate statement.
9     MR. MADISON: And I am not so sure that, with all
10 due respect to the Court, that the Court is -- it was not a
11 wilful concealment. We had stated we had called her a few
12 times and she stated she had been out town. All we asked is
13 that while she was in the court. So in that respect there
14 was no allegation that she was not wilfully turning over the
15 tape, we just hadn't been able to get up with her. The tape
16 was made by Dewon Williams who the government was going to
17 call as a witness in the case.
18     THE COURT: I don't know who the tape was made by.
19     MR. MADISON: We do. They didn't call that witness,
20 therefore --
21     THE COURT: Let's be careful of the representations
22 we make about information. It was my understanding that it
23 had to do with a statement that involved Mr. Sisson and it
24 was necessary that he be retained, which I have asked that he
25 not be moved out of the Elmore County facility so that you

## Page 703

1 can recall him based on the information in that tape.
2     MR. MADISON: Salary, you said Sisson.
3     THE COURT: I'm sorry, Mr. Salary.
4     MR. MADISON: But it did deal with Mr. Salary but it
5 can only be authenticated through Mr. Williams, who they did
6 not call.
7     THE COURT: Okay. Let's bring the jury in.
8     (At which time, 3:59 p.m., the jury entered the
9 courtroom.)
10     THE COURT: Ladies and gentlemen, as you heard
11 before, I allowed you to be in recess. The government has
12 announced that it rests its case. While you were absent from
13 the courtroom the defense indicated that they intended to
14 call no witnesses on either of their behalf. It is necessary
15 for the attorneys and I to confer before we go to the final
16 phase of this trial, and so that we don't have to keep you
17 past 5:00 o'clock tonight I have some good news and some bad
18 news. Obviously the good news is you are going to get to go
19 home early this afternoon. The bad news is you will be back
20 tomorrow. The good news on that hopefully is this case will
21 conclude tomorrow. It will be presented to you for your
22 deliberation. You can take as long as you would like to reach
23 your decision, and I will give you instructions at that time.
24     But so that we can efficiently use you in this case,
25 ladies and gentlemen, I am going to dismiss you for the

## Page 704

1 evening and ask that you come back so that we can be prepared
2 to continue this trial in the morning at 9:00 o'clock. I will
3 tell you what will occur in the morning at 9:00 o'clock is
4 the attorneys will make what is termed their closing
5 arguments to you based upon their respective positions, and
6 the evidence as you have heard. I will then instruct you on
7 the law of the case and then you will begin your
8 deliberations at that time. But do not begin your
9 deliberations now, do not allow anyone to discuss the case
10 with you at this time.
11     And please recall my instructions to you about the
12 media as well as all other instructions that I gave you on
13 Monday. If you will leave your notes in your chair you can
14 retrieve those tomorrow when you arrive, and we will conclude
15 the evidence and the argument portion of this case tomorrow
16 morning. And I hope that you have a good evening. See you
17 tomorrow morning at 9:00 o'clock. Meet downstairs before
18 9:00 o'clock and we will begin promptly at 9:00.
19     (At which time, 4:00 p.m., the jury left the
20 courtroom.)
21     THE COURT: The record will reflect we are out of
22 the hearing and the presence of the jury. And we will be in
23 recess until 9:00 in the morning. We will have a charge
24 conference in my chambers. If you will give me about 15, 20
25 minutes to get the jury charges prepared for your review, we

## Page 705

1 can go over them in my chambers say around 4:20.
2     (At which time, 4:02 p.m., a recess was had until the
3 following day.)