```
                                                                    Page 1
 1        IN THE UNITED STATES DISTRICT COURT FOR
 2              THE MIDDLE DISTRICT OF ALABAMA
 3                     NORTHERN DIVISION
 4
 5
 6  UNITED STATES OF AMERICA
 7
 8       Vs.              CR. NO. 02-7-N
 9
10  ARTRONE CHEATHAM
11
12
13            *   *   *   *   *   *   *   *
14                    SENTENCE HEARING
15            *   *   *   *   *   *   *   *
16         Before Hon. Mark E. Fuller, Judge,
17      at Montgomery, Alabama, September 23, 2003
18            *   *   *   *   *   *   *   *
19
20
21  APPEARANCES: For the Government: Todd A. Brown
22                                   Assistant U.S. Attorney
23           For the Defendant: Donald G. Madison,
24                              Attorney at Law
25
```

Page 2

1  (The above case coming on for hearing at Montgomery,
2  Alabama, September 23, 2003, before Honorable Mark E. Fuller,
3  Judge, the following proceedings were had:)
4     THE COURT: We will call next the case of United
5  States of America versus Artrone Cheatham. Mr. Brown, is the
6  United States prepared to go forward with this sentencing?
7     MR. BROWN: Yes, Your Honor.
8     THE COURT: Mr. Madison, is the Defendant prepared
9  to go forward?
10     MR. MADISON: Yes, Your Honor.
11     THE COURT: I note that there are objections; is
12  that correct?
13     MR. MADISON: That's correct, Your Honor.
14     THE COURT: You may remain at your table but please
15  stand, Mr. Madison and Mr. Cheatham. Mr. Cheatham, have you
16  and your attorney reviewed the presentence report before
17  today's date?
18     THE DEFENDANT: No -- yes, sir.
19     THE COURT: Let me ask you again, Mr. Cheatham, have
20  you and your attorney reviewed the presentence report before
21  today's date?
22     THE DEFENDANT: Yes.
23     THE COURT: Do you have any objections to any of the
24  content of the presentence report, Mr. Madison?
25     MR. MADISON: Yes, sir, we do.

Page 3

1     THE COURT: All right. You may be seated. You may
2  present any evidence in support of any objections that you
3  may have. Do you want to take them numerically? The Court
4  will be happy to do that.
5     MR. MADISON: Yes, sir, Your Honor. With respect to
6  the presentence report primarily, and some of these are going
7  to be intermingling with some of the issues that will be
8  raised on appeal and therefore it may appear repetitious to
9  the Court and I apologize in that sense that it may appear
10  that we are being repetitious, but at the same time we don't
11  want it to be construed that we waived any of these arguments
12  by our failure to raise them before the Court today, so
13  therefore we have taken the position to err on the side of
14  caution and basically restated some of the objections which
15  will be intermingling on the appeal.
16     But the offense conduct -- we filed objections to
17  the offense conduct stated in the presentence report, and the
18  reason we filed the objection to the offense conduct --
19     THE COURT: Is that objection number one?
20     MR. MADISON: Your Honor, I'm sorry?
21     THE COURT: Objection number one?
22     MR. MADISON: I think I skipped objection number
23  one. I didn't mean to. Part A, the offense, the counts two
24  through five and those counts dealing with part A in the
25  offense specifically pertaining to the Defendant Carter, we

Page 4

1  had objected to the inclusion of those items in Mr.
2  Cheatham's report, presentence report, based upon the fact
3  that our position is, as the Court is aware, that the
4  government conceded that counts two through five of the
5  indictment had no application to the Defendant Cheatham. We
6  therefore feel that it's improper to use those counts which
7  relate solely to the Defendant Carter as to the Defendant
8  Cheatham in his report.
9     THE COURT: Let me interrupt you if I could, Mr.
10  Madison. The Court makes it clear in sentencing Mr. Cheatham
11  in this case that other than any reference to properly
12  admitted evidence as to any relevant conduct involving Mr.
13  Cheatham with any other individual in furtherance of the
14  conspiracy for which he was convicted, the Court does not
15  consider any of the evidence in support of the convictions of
16  Mr. Jimmy Carter, Junior in counts two through five of the
17  superceding indictment.
18     MR. MADISON: Having said that, Your Honor, then
19  there's nothing further for us to address concerning those
20  particular issues.
21     THE COURT: State your next objection.
22     MR. MADISON: The next objection as part of the
23  offense was made to paragraphs 19 and 20, I believe,
24  pertaining to the testimony of Wallace Salary. And it's that
25  particular conduct that I understand is serving as the basis

Page 5

1  for the conspiracy conviction.
2      Concerning Mr. Salary's testimony, and as the Court
3  is aware there were two trials, there was a severed trial
4  where Mr. Cheatham was tried individually without the
5  co-Defendant being tried, and Mr. Salary testified or
6  provided testimony at that trial. Then the jury was hung on
7  that particular case and then we came back and this Court
8  consolidated the trials of the two together.
9      At the first trial Mr. Salary testified that on
10 occasion that when he would sell -- or the reason he would
11 know that he was selling cocaine to -- for Cheatham was that
12 he would give Carter a kilogram of cocaine and then he would
13 give Cheatham a half a kilogram -- or not Cheatham, he would
14 give Carter an extra half a kilogram. His testimony in the
15 first trial was to the effect that these transactions
16 occurred only a couple of occasions, then he provided some
17 vague testimony about maybe it was every five days on Carter
18 or whatever, but there were never any specific times nor
19 dates with respect to the regularity or frequency of the
20 amount of cocaine that was supposedly given for Mr. Cheatham.
21     Now, in the second trial Mr. Salary testified that
22 it was basically a one-for-one type transaction, that every
23 time Mr. Carter showed up that he gave Mr. Carter a kilogram
24 of cocaine and then also gave him a kilogram of cocaine for
25 Mr. Cheatham. That testimony differed from Mr. Salary's

Page 6

1  testimony provided at the first trial. He basically gave a
2  corresponding 30 to 30 kilogram attribution of sales to those
3  individuals for each occasion which totally contradicted the
4  testimony he gave at the first trial. Based upon his
5  testimony in the second trial I think that he provided
6  testimony to the jury that he, in fact, submitted or sold to
7  Mr. Cheatham 30 kilograms of cocaine, which we dispute
8  anyway. But the bottom line is that his testimony was
9  contradictory and we feel false. Not withstanding the jury
10 hung the second time, the Court instructed the jury as to Mr.
11 Cheatham, the Court gave instructions and they went back and
12 found him guilty.
13     But basically Mr. Salary's testimony, as vague and
14 as ambiguous as that testimony was, provided testimony as to
15 powdered cocaine during the term of the conspiracy which was
16 in the indictment 1999 through the year 2002 I believe. The
17 only testimony that Mr. Salary provided with respect to Mr.
18 Cheatham concerning any crack sales dealt with 1998 and 1997.
19 He specifically testified he never saw Mr. Cheatham cook any
20 crack cocaine.
21     As I pointed out in the guidelines, the guidelines
22 themselves distinguish differences as to persons charged with
23 possession of powder or persons charged with possession of
24 crack cocaine, there are differing levels, and that had this
25 particular offense been a powder versus a crack-type thing

Page 7

1  there would have been a 34 instead of a 38 offense level, so
2  therefore I think it's material in all respects that Mr.
3  Salary testified -- or his only testimony during the term of
4  the conspiracy was powder cocaine. And the guidelines showed
5  that powder versus crack is a material distinction.
6      We felt like a fatal variance occurred, and, of
7  course, those are a lot of the legal issues the Court has
8  already heard. But I was waiting until the sentencing
9  reports came out and I was curious how the government was
10 going to treat this argument and they treated it just like I
11 have been arguing the whole time, and that is two through
12 five weren't assessed against my client, which was the only
13 physical evidence offered in this case. That's been
14 conceded. And the fact that there was nothing offered in
15 connection with crack cocaine during the term of the
16 conspiracy. So the presentence report only incorporating
17 Salary's testimony I think supports our position with respect
18 to the prior arguments that we have made to the Court
19 concerning the crack versus powder and the fatal variance
20 which occurred between the indictment and the proof in the
21 case.
22     THE COURT: Mr. Brown, do you have any response?
23     MR. BROWN: Yes, sir. May I approach?
24     THE COURT: Yes, you may.
25     MR. BROWN: Although it's part of the record, Your

Page 8

1  Honor, I am going to provide the Court a copy of Government's
2  Exhibit A, which is the volume one of the transcript of the
3  trial in this case, which was held on June 16th, 2003. I
4  believe this first volume covers pages one through two
5  hundred and 62.
6      THE COURT: I believe I have a copy of that. I have
7  volume 16 of 19 which includes the testimony of Wallace
8  Salary, Michael Darden, Lynn Griffin, G.B. Shirley, Robert
9  Thornton, and Gene Sisson, as well as arguments from counsel
10 and the Court's instructions to the jury.
11     MR. BROWN: Okay. I was going to refer to certain
12 page numbers and I hope they will equal up to the Court's. I
13 also have a copy of Government's Exhibit B, which was the
14 first volume, again, of the trial for Artrone Cheatham alone
15 which began to Monday, May 5th. It is again volume one.
16     THE COURT: Is that the trial in which Judge Lindsey
17 presided?
18     MR. BROWN: Yes, Your Honor. And it goes through
19 pages -- goes pages one through 110. There's also an index
20 that goes pages 111 through 124. And that's Government's
21 Exhibit B. And I will just hand those for the Court's
22 reference. (complies)
23     THE COURT: Mr. Brown, are you asking that these
24 transcripts that you have marked as Government's Exhibit A
25 and Government's Exhibit B to this hearing today be made a

Page 9

1  part of the record of this sentencing?
2      MR. BROWN: I believe so, Your Honor, because I
3  think that the page numbers that I reference may not be the
4  same as yours, although they may be, just for convenience.
5      THE COURT: I think that they likely will be, if I
6  understand the nature of preparing a record or a transcript.
7  But out of an abundance of caution I will attach them unless
8  it appears as if the originals are already in the clerk's
9  office, at which time I will not require the clerk to
10 maintain duplicate copies for the purposes of this record.
11 You may proceed.
12     MR. MADISON: Judge, may I just submit a general
13 objection because I haven't seen what it is he is submitting
14 prior to today's date. We have previously had deadlines for
15 filing objections to the reports and responses to each
16 other's sentencing, and I am just going to submit a general
17 objection to his filing now because I am not sure what it is
18 he is getting ready to refer to.
19     MR. BROWN: I just handed the Court copies of two
20 volumes of the transcript that were ordered by the Defendant
21 in connection with his appeal.
22     THE COURT: Objection overruled.
23     MR. BROWN: The nature of the Defendant's second
24 objection primarily hinges on drug quantity and alleged
25 inconsistent testimony by one of the witnesses in this case,

Page 10

1  Wallace Salary. And I am just going to address the fact that
2  there are no inconsistencies between those first two trials.
3      In the first trial, which would be referenced as
4  Government's Exhibit B, at page 59, lines 9 through 11, this
5  is the testimony of Wallace Salary at that point. Wallace
6  Salary states at line nine in reference to Defendant Carter
7  and Defendant Cheatham, as he states at line eight, working
8  as a team, he says at line nine, I didn't need both of them
9  coming at the same time, didn't -- didn't but one need to
10 pick up the drugs and take it to their -- divide it between
11 the two of them.
12     The Defendant has contended here today and in his
13 objections though the equality between the two individuals
14 was inconsistent. And I think that shows that there was -- it
15 was consistent, that it was divided between these two. How
16 much drug quantity was attributed to Mr. Cheatham in the
17 first trial? At the end of page 62 I asked a question of Mr.
18 Salary at line 24 about how much -- how much drugs was
19 attributable to Artrone Cheatham in 1999? And in response to
20 that question, lines 25 -- at line 25 of page 62 he says
21 maybe between 30 keys.
22     I go on to ask him on page 63 at lines one through
23 12, is that powder cocaine or cocaine base? His response was
24 it was powder. And then I asked him, in your understanding is
25 that -- was that your understanding that powder, the 30 keys

Page 11

1  of powder cocaine was all converted to crack cocaine? His
2  response at line six, Mr. Salary's was, it was always
3  converted. And he goes on to state that -- the fact that it
4  was always converted was the way that they always sold the
5  drugs. And he talks about at line ten if you take a key,
6  which is a slang term for a kilogram, of cocaine and blow it
7  up to two kilograms you are going to get the same amount of
8  money you are going to pay for the one key. So I think it's
9  clear that not only the Defendant's assertion that that is
10 inconsistent with his testimony in the second trial is
11 incorrect, and that the drug quantity itself is correct as
12 the probation office found it.
13     Backing up just two pages to page 60, Mr. Salary at
14 line 13 describes the conversion factor for the cocaine that
15 he was -- he and at times Jimmy Carter were converting. He
16 stated you put 28 grams of powdered cocaine in some container
17 and then that would increase the quantity to 42, sometimes 52
18 grams of cocaine base. On page 62 he stated in reference to
19 poorer grade of cocaine that you might only be able to
20 convert 28 grams of cocaine to 30 grams of cocaine, which is
21 still more than a one-to-one conversion factor. But never
22 the less that's what he said, if you had some bad cocaine
23 that that would be the conversion factor in that instance.
24     In the second trial, which was before this Court and
25 not Judge Lindsey, on page 34 of what I have marked as

Page 12

1  Government's Exhibit A, line 21, Wallace Salary states -- or
2  in response to my question at line 21, that you would cook
3  the cocaine up or convert the cocaine to crack cocaine. Mr.
4  Salary states the majority of the time, maybe 30 or 40 times
5  we did that by ourself. He explained where that was, and
6  mentions that it was at his brother's house and gave some
7  times and dates.
8      THE COURT: Where are you, Mr. Brown?
9      MR. BROWN: I'm sorry, page 34.
10     THE COURT: 34?
11     MR. BROWN: Yes, sir.
12     THE COURT: Of Exhibit A?
13     MR. BROWN: Yes, sir.
14     THE COURT: I'm sorry.
15     MR. BROWN: And I was referring to somewhere
16 beginning at line 21. And going into page 35. Line six, he
17 also states, Mr. Salary does, that most of the time he bought
18 it and cooked it up -- bought the cocaine and cooked it up
19 and made it hard. A few times I had to buy it it was already
20 ready, which means it was already converted. And down at line
21 19 he states well, the both of them -- in response to my
22 question about how much drugs had been sold to Mr. Carter and
23 Mr. Cheatham just during the year of 1999, he states that
24 between the both of them I would say 60 keys. Both of them
25 would have come about 30 -- between 30 apiece. Which is

Page 13

1  completely consistent with his trial testimony in the first
2  trial.
3      A little bit further back, or actually quite a bit
4  further back, on page 205 of Government's Exhibit A, at line
5  7, Mr. Salary states in response to my question about the
6  powder cocaine and the cocaine base, Mr. Salary states at
7  line 7 it was powder, but, you know, all the powder was being
8  converted over to crack. And then I began to ask him, and
9  that's your testimony now that all the -- and he interrupts
10 and states yes, all of it was converted to crack. None of
11 these individuals sold really powdered cocaine, everybody
12 made their money selling crack cocaine.
13     All of those items are consistent -- show a
14 consistency between the testimony, both in terms of what was
15 sold, what the agreement was, which is -- the nature of this
16 crime is the conspiracy, the agreement was that, and the
17 quantity of cocaine as found by the probation office.
18     Just to reference back -- and I apologize for going
19 back to Government's Exhibit B -- in the first trial, other
20 individuals were also testifying in that case, aside from Mr.
21 Salary. At page 75 of Government's Exhibit B, an individual
22 by the name of Willie Terrell Jackson testified. And in that
23 testimony, starting at line 14 about whether Willie Terrell
24 Jackson bought any cocaine from Mr. Cheatham starting in
25 1999, at line 15 Mr. Jackson says I seen him with a lot of

Page 14

1  crack and then I also purchased a lot of crack. So I asked
2  him how much have you seen him with? And at line 19 he says
3  the most I seen him with at one time was about five kilos of
4  cocaine. And then I bought it -- and then the much I
5  bought -- that's just the way he said it, it's typed
6  correctly -- about five kilos of cocaine. And then the much
7  I bought was 62 grams to a hundred and 25 grams to two
8  hundred and 50 grams, whatever I want, because see, I don't
9  buy powder, I buy crack. How much would you -- how often
10 would you buy from Moochie -- who is an alias name for Mr.
11 Cheatham -- during 1999? The average -- starting on page
12 76 -- the average quantity would be somewhere two hundred 50
13 to a hundred 25 grams two to three times a week.
14     An individual by the name of Abraham Humphrey
15 testified at that first trial as well. His testimony begins
16 at page 80. I am going to refer to page 82. After referring
17 to several Haitian nationals, the question was asked about
18 Mr. Cheatham on page 82 at the first line, and then beginning
19 around line 16 Abraham Humphrey is asked the question by me,
20 so you are being supplied back in 1995 or '96 from these
21 individuals with crack cocaine? He says yes. I said then you
22 met Artrone Cheatham? He says yes. I asked him what happened
23 then? He said from then I started being supplied from him.
24 On page 87, at line four, Mr. Humphrey continues, at line
25 four by stating -- or my question at line four, that key to

Page 15

1  one kilogram quantity went from 1998 up until 2001? He
2  responded that it did. And I asked him how often did that
3  occur? And he indicated that it was approximately once a
4  month.
5      It is the government's position that Mr. Salary's
6  testimony was consistent in both trials, as corroborated by
7  these other individuals who testified under oath at the first
8  trial, and that the quantities found by the probation office
9  should be used in determining the guidelines sentence
10 pursuant to 2D1.1.
11         THE COURT: You may respond.
12         MR. MADISON: Yes, sir. Judge, the government's
13 whole case boils down to proving the elements of the
14 conspiracy through Mr. Salary's testimony that he understood
15 that that's what they did with this cocaine. Now, that
16 doesn't even reflect personal knowledge being conveyed to the
17 Court by Mr. Salary, it's just something that he understood
18 through hearsay or some other statement.
19         Number one, there was -- there are no facts
20 submitted with respect to any agreement between the parties.
21 There were no facts submitted as to where the cocaine went
22 beyond my client, Artrone Cheatham. So there were no facts
23 submitted to indicate that there was anything other than if
24 you assume his testimony to be true that there was a
25 buyer/seller relationship. Not a conspiracy but a

Page 16

1  buyer/seller relationship. He testified without question and
2  without doubt that he never saw Cheatham cook any crack
3  cocaine. He testified he saw Carter but he said Carter was
4  cooking it for him too.
5      All that too dealt with before 1997 or before 1999.
6  The only testimony out of two trials presented against my
7  client, Artrone Cheatham, was a generalized statement
8  provided through the testimony of Salary that he sold -- I
9  sold him 30 kilos of cocaine in 1999. That's it. He doesn't
10 say he came every so often or he came this, he came that. He
11 doesn't even identify with particularity any particular sale
12 that occurred during that time period. He could have said Don
13 Madison -- I sold Don Madison 30 kilos of powdered cocaine
14 and it would be me sitting here right as we speak today
15 defending the charges based upon Wallace Salary's testimony.
16     There's no when, there's no how, there's no to whom.
17 There are no facts to substantiate any of Salary's sales to
18 Cheatham other than the fact that he is grasping some figure
19 out of the air and throwing it out to the jury. The crack
20 cocaine and the only cocaine attributing or relating any
21 information concerning my client regarding crack cocaine by
22 Wallace Salary is 1997 and 1998 which is prior to the rise of
23 the conspiracy.
24     A while ago when I raised my objections I also read
25 the definition from the guidelines as to what cocaine base

Page 17

1  was. I cited from the case, I think it was U.S. versus
2  Simpson -- yes, sir -- with respect to testimony provided in
3  that case where the 11th Circuit reviewed testimony of
4  another trial where they tried to attribute cocaine to a
5  Defendant which was prior to the time that the conspiracy
6  began, and the 11th Circuit said no, you can't do that. In
7  U.S. versus Simpson, the Court said no, that occurred before
8  the conspiracy and therefore it can not be used against this
9  Defendant.
10     That's precisely what we have in this case. The only
11  crack cocaine offered against my client occurred -- or
12  testimony was '97, '98, which was prior to the commencement
13  of the conspiracy, the alleged conspiracy according to the
14  indictment. There was no common goal discussed. Salary
15  provided no testimony as to whom they sold it to or to whom
16  Mr. Cheatham did. There was no testimony as to how they
17  divided the proceeds of these transactions. There's no joint
18  enterprise, there's no factual basis for any joint
19  enterprise.
20     You know, the only thing we have got is, the first
21  trial they tried to prove my client was related in some way
22  to some guy named Cappachino and another guy named Curalt or
23  some other individuals. Well, at the second trial they try to
24  prove my guy is a continuation of the Salary conspiracy.
25  That's multiple conspiracies. They are proving a different

Page 18

1  conspiracy than what they originally charged. They proceeded
2  down a different course of evidence than that from the first
3  trial. One or two sentences link my client to a conspiracy,
4  and now based upon the sentencing guidelines he's looking at
5  19 years with no offense ever having been committed
6  previously. It's just -- to me it's unfathomable that a jury
7  believed Mr. Salary's testimony I guess to justify the
8  conviction in this case. There just weren't any facts to
9  substantiate the charge.
10     And, you know, I know the Court is probably sick of
11  me raising the issues I have been raising, and repeating and
12  being repetitive in my argument, but I am just convinced and
13  I guess it's my duty to bring these arguments to the Court's
14  attention. But in any event, the only other -- that's it with
15  respect to the testimony. Basically the bottom line is,
16  Judge, we felt like they proved their case in chief with what
17  might be referred to as relevant conduct, even if it occurred
18  during the conspiracy, and I don't think that's what the law
19  requires. I think the law requires them -- this is a classic
20  case of why the United States Congress has boo-booed in my
21  opinion by not requiring relation to an overt act when you
22  are trying to prove a conspiracy. This is the precise factual
23  setting as to why there's a fallacy in that law. You know,
24  again, if he had just used my name instead of Artrone
25  Cheatham's I would be the one sitting here today defending

Page 19

1  these charges based upon Salary. And I have just got a real
2  problem with it from the standpoint of being a legal
3  practitioner.
4     THE COURT: Any further response, Mr. Brown?
5     MR. BROWN: The only thing I would respond to, Your
6  Honor, is that we were listening as the Defendant's second
7  objection, after looking back at the probation report I
8  believe this really is the third objection and the second and
9  first ones were similar.
10     THE COURT: Let me make sure I can clarify the
11  record. The second and first objections of the Defendant as
12  the Court has interpreted them to be involve the attributable
13  conduct of Mr. Jimmy Carter, Junior in counts two through
14  five to Mr. Cheatham for the purposes of sentencing.
15     MR. MADISON: Yes, sir.
16     THE COURT: And I have already made it clear I have
17  no intentions of including any conduct of Mr. Carter other
18  than properly admitted relevant conduct under the guidelines
19  and under the statute for purposes of sentencing. So to the
20  extent that the Defendant's objections request the Court not
21  to consider evidence supporting the conviction of Jimmy
22  Carter, Junior for the offenses of -- offenses two through
23  five in the superseding indictment, other than relevant
24  conduct testimony, that objection is granted, or sustained.
25  The evidence that we have been considering, the testimony I

Page 20

1  think that has been presented to the Court with the argument
2  of counsel has been in reference to the third objection, and
3  that I think has been properly identified by Mr. Madison when
4  he began by pointing out his objections to paragraphs 19 and
5  20. And I think inclusive in that should be paragraph 25
6  which is set forth in your objection in the presentence
7  report. And that would be the testimony of Wallace Salary and
8  others in regard to the quantity of drugs attributable to Mr.
9  Cheatham for purposes of sentencing. Is that accurate, Mr.
10  Madison?
11     MR. MADISON: Yes, sir, that's accurate.
12     MR. BROWN: Yes, sir, that's the way the government
13  understands it.
14     THE COURT: Okay. Anything else on the third
15  objection? Anything else, Mr. Madison?
16     MR. MADISON: On the third objection, no, Your
17  Honor.
18     THE COURT: The Court makes the following findings
19  of fact in relation to objection number three from the
20  Defendant in this case. The Court has reviewed the testimony
21  as set forth in volume 16 of 19 of the transcript of the case
22  of United States of America versus Jimmy Carter and Artrone
23  Cheatham, case number 02-CR-7. Particularly the Court has
24  reviewed the testimony, most of which has been referred to,
25  involving the testimony of Wallace Salary contained on pages

Condenselt™

## Page 21

1  33 through 35 of the transcript that the Court has reviewed
2  prior to today's date.
3      Also, the Court has, and would point out for the
4  purposes of this hearing, that on page 195 Mr. Salary
5  testified that Mr. Cheatham worked through Mr. Carter. And
6  indicated on lines four and five that they came down together
7  for a few times but when Carter called Cheatham came with
8  him. The testimony of Mr. Salary continuing on page 199
9  indicates that -- beginning at line two -- the verbal
10 agreement that me and Mr. Jimmy Carter and Mr. Cheatham had
11 was when Jimmy came and got his dope he got Cheatham's dope
12 as well. And the times I gave Jimmy the crack cocaine and one
13 of the keys for Cheatham as well, so yes, sir, I have sold
14 Mr. Cheatham crack cocaine.
15     Picking up on line 17, in reference to a time period
16 when this conduct occurred, Mr. Salary indicated that the
17 conduct occurred involving the sale of 30 kilos of cocaine
18 was in 1999. He also references a sale of crack cocaine in
19 1997 and 1998, which the Court notes are dates preceding the
20 conspiracy for which this Defendant was indicted. And as has
21 been pointed out on page 205 Mr. Salary also testified about
22 the sale of powdered cocaine and crack cocaine. And
23 beginning on line 14 and continuing through line 22, Mr.
24 Salary indicated that the only person that really basically
25 sold powder was Salary and Jimmy. And there's reference that

## Page 22

1  Jimmy Carter would cook crack cocaine for himself and Mr.
2  Cheatham.
3      In reviewing the case that has been submitted by the
4  defense, case of United States versus Darrell Simpson, cited
5  at 228 F.3d 1294, the Court finds that the argument of the
6  Defendant, although accurate to the facts contained in this
7  case, being the Simpson case, it does not necessarily -- I do
8  not find that the argument of counsel is persuasive to the
9  facts of this case, United States of America versus Cheatham.
10     In the Simpson opinion the 11th Circuit pointed out
11 that conduct which preceded a conspiracy by some four years
12 and also involved other individuals not involved in the
13 conspiracy for which the Defendant was ultimately convicted
14 should not have been included as relevant conduct for the
15 purposes of sentencing. I would agree.
16     In this case, however, the testimony has been
17 consistent by Mr. Salary that the purchase and the
18 arrangement for the manufacture of cocaine base from the
19 powdered cocaine which preceded the date of the conspiracy
20 period between January, 1999 and January of 2002 was
21 consistent with the brief period of time referenced in the
22 testimony of Mr. Salary which dated back as early as 1997. So
23 the Court finds that a time period of two years or less in
24 which the conduct seems to be consistent as far as the
25 involvement of the Defendant in this case with the same

## Page 23

1  individuals of the conspiracy for which he was charged is
2  relevant conduct, and the Court finds that that quantity will
3  be considered in sentencing in this case.
4      MR. MADISON: Judge, may I take one exception? You
5  just referred to certain excerpts of the trial testimony at
6  page 199 and then going on over to page two hundred the
7  specific question was asked, nothing -- talking to Salary, it
8  says okay, I sold him crack in '97, sold him crack, that was
9  in '97, nothing from '99, 2000, 2001, you were in jail in
10 2000, most of the year 2000. Answer, 2000 I was in jail. I
11 sold him in 1999 -- I sold him -- continuing on page 200 --
12 mostly powder, all powder when it came to Mr. Cheatham, but
13 in '98 and '97 I sold him crack. So the question, you didn't
14 sell him any crack in 2000. Answer was, no, sir.
15     THE COURT: Although -- go ahead.
16     MR. MADISON: But that was my point, Your Honor, the
17 government's case in chief is based strictly on the relevant
18 conduct and not on evidence produced during the term of the
19 conspiracy. That's why --
20     THE COURT: And the 11th Circuit may agree, Mr.
21 Madison. I think I have made it clear I want to give you
22 every opportunity to secure the record for the benefit of
23 your client, and I think that I have done that.
24     MR. MADISON: Yes, sir.
25     THE COURT: The jury has found that your client was

## Page 24

1  involved in a conspiracy in which he possessed with intent to
2  distribute or distribute 50 grams or more of cocaine base.
3  And I find that the testimony does support that. Also by a
4  less stringent standard the Court finds that there are other
5  relevant conduct factors which would corroborate the conduct
6  of Mr. Cheatham for purposes of sentencing, and would allow
7  the Court to impute cocaine that fell outside of the
8  conspiracy period back to relevant conduct. And for purposes
9  of sentencing that is the Court's finding in this case.
10     The Court finds specifically that the quantity of
11 powdered cocaine and/or cocaine base is up to an amount of 30
12 kilograms for the year 1999. For the purposes of other
13 relevant conduct, the quantity of cocaine attributable to Mr.
14 Cheatham in the years stated as early back as 1997 is
15 included, but will not enhance the sentence that the Court
16 feels is just under the circumstances. Any other objections?
17     MR. MADISON: Judge, as the Court is aware I filed
18 post-trial motions and I would ask that all the issues raised
19 in those motions be incorporated herein by reference without
20 having to restate all of those. The Court is aware of most of
21 the arguments cited therein. I do have one further objection,
22 and that would be that the application of the guidelines in
23 this case to the facts of this case in my opinion, and it's
24 our position, represents cruel and unusual punishment. I know
25 that we can't -- you know, we are sort of bound by the

Page 25

1  guidelines but where you have got a criminal Defendant whose
2  only prior is a misdemeanor for menacing which wasn't even
3  included in the calculations under the guidelines, the
4  guidelines sentence in this case being from 19 to 23 years is
5  cruel and unusual in my opinion when you have got a first
6  time offender. And I know that that's -- we are bound by the
7  guidelines, but in my opinion it's excessive -- grossly
8  excessive, and the fact that the guidelines don't allow some
9  discretion for the trial judge I think to possibly take that
10 into account as a mitigating factor, and the sentence that
11 results is cruel and unusual.
12     THE COURT: Anything from the government, Mr. Brown?
13     MR. BROWN: No, Your Honor.
14     THE COURT: Okay. Mr. Madison, if you and your
15 client will approach the podium. Having made findings as to
16 the objections to the presentence report, the Court finds
17 that the offense level is 38, the criminal history category
18 is I. The guideline range is from two hundred 35 months to
19 two hundred 93 months. The supervised release period is five
20 years, and the fine range is from 25 thousand to four million
21 dollars. Do either you or your client have anything to say in
22 mitigation or otherwise before the Court pronounces sentence
23 in this case, Mr. Madison?
24     MR. MADISON: No, sir, none other than to show the
25 Court that like other sentencings that have occurred here

Page 26

1  today his family is here in attendance. Of course, that
2  doesn't serve to mitigate the sentence but they are here in
3  support of Mr. Cheatham.
4      THE COURT: And again, to the extent that a record
5  is being maintained for the purposes of appeal, which I fully
6  anticipate, Mr. Madison, I want you to understand that this
7  Court will sentence Mr. Cheatham in accordance with the
8  guidelines, and to whatever degree there are any deviations
9  or any relief from that sentence, the issue will be preserved
10 for appeal.
11     MR. MADISON: Yes, sir.
12     THE COURT: Mr. Cheatham, the sentence will now be
13 stated but you will have a final chance to make legal
14 objections before the sentence is imposed. Pursuant to the
15 Sentencing Reform Act of 1984, it is the judgment of the
16 Court that you are hereby committed to the custody of the
17 Federal Bureau of Prisons to be imprisoned for a term of two
18 hundred and 35 months. You are remanded to the custody of the
19 United States Marshal. You shall pay to the United States
20 District Court Clerk a special assessment fee of one hundred
21 dollars. The special assessment fee is due immediately. Based
22 upon your inability to pay the Court waives the imposition of
23 a fine.
24     Upon release from imprisonment you shall be placed
25 on supervised release for a term of five years. Within 72

Page 27

1  hours of release from custody you shall report to the
2  probation office in the District to which you are released.
3  While on supervised release you shall comply with the
4  mandatory and standard conditions of supervised release
5  and/or probation on file with this Court.
6      The Court also orders the following special
7  conditions: You shall participate in drug testing and/or
8  treatment if directed by the probation officer. You shall
9  contribute to the cost of any treatment based upon your
10 ability to pay and the availability of third-party payments.
11 You shall submit to a search of your person, residence,
12 office or vehicle pursuant to the search policy of this
13 Court. The Court finds that there's no identifiable victim
14 who incurred a financial loss as a result of this offense.
15 The sentence is imposed at two hundred and 35 months because
16 the Court deems the sentence is sufficiently punitive to
17 address the factors to be considered in imposing a sentence
18 as provided in 18 U.S.C. Section 3553(a), and for that reason
19 the Court sentences you at the low end of the sentencing
20 guidelines.
21     I will make one addition to my order in this case,
22 and add the following: The Court recommends that you be
23 designated to a facility where intensive residential
24 substance abuse treatment is available, to make you available
25 for such treatment if you feel it would be beneficial.

Page 28

1      Are there any objections to the sentence or to the
2  manner in which the Court pronounced it? For example, do you
3  have any objections to the Court's ultimate findings of fact
4  or conclusions of law? If you fail to state such objections
5  at this point you run the risk of being unable to raise such
6  objections on appeal.
7      MR. MADISON: And the Court is aware that we have
8  raised numerous --
9      THE COURT: You restate the same objections?
10     MR. MADISON: We are reincorporating all of our
11 prior objections not only to the evidence but to the rulings
12 made during the trial with respect to the application of the
13 facts and the evidence as well as the presentence report and
14 the objections submitted today, Your Honor.
15     THE COURT: To the Court's findings of fact and
16 conclusions of law as to your third objection?
17     MR. MADISON: Yes, sir.
18     THE COURT: Okay.
19     MR. MADISON: And the one that I added that wasn't
20 included in the third objection being the cruel and unusual.
21     THE COURT: The sentence is ordered imposed as
22 stated. Mr. Cheatham, you have a right to appeal. If can you
23 not afford the cost of an appeal you have a right to apply
24 for leave to appeal in forma pauperis. I wish you best of
25 luck and you are remanded to the custody of the United States

Page 29

1 Marshal.
2   MR. MADISON: Your Honor, this is the first criminal
3 case I have handled in quite some time. The rules read that
4 the notice of appeal was to be filed within ten days of the
5 date that you ruled on the last post-conviction motion, and
6 either that or I misconstrued the time for appeal, anyway we
7 have already filed notice of appeal, the record has already
8 been produced and the clerk's record I understand now is
9 ready to be transmitted to the 11th Circuit, but this
10 sentencing was not a part of those records. And I may have
11 gotten the cart before the horse I guess, but in any event I
12 would move that today's proceedings be supplemented in the
13 record.
14   THE COURT: Mr. Madison, I don't want to say
15 anything on the record that would deviate from the Federal
16 Rules of Criminal Procedure or the Criminal Appellate Rules,
17 but it is my understanding that your time for appeal begins
18 to run after the Court's order on the sentence, when the
19 sentence is imposed. Certainly this Court's sentencing order
20 will be included in whatever record is prepared for purposes
21 of appeal. But I would recommend that you review the rules
22 and I believe that your appeal rights begin to run after my
23 order will be entered reflecting the sentence that is imposed
24 in this case.
25   MR. MADISON: Yes, sir. And I guess I will probably

Page 30

1 have to refile my notice of appeal, but I would like to state
2 verbally on the record that we are providing notice of appeal
3 not only in this case but a joint appeal was filed with
4 respect to the co-Defendant Carter as well.
5   THE COURT: It's so noted. Anything else in this
6 case?
7   MR. BROWN: No, Your Honor.
8   MR. MADISON: No, sir.
9   THE COURT: All right.
10      * * * * *
11   I certify that the foregoing is a correct transcript
12 from the record of proceedings in the above-entitled matter.
13 This the 20th day of October, 2003.
14
15   _____
     Official Court Reporter